D. EDWARD HAYS, #162507
ehays@marshackhays.com
CHAD V. HAES, #267221
chaes@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Tel    949-333-7777
Fax    949-333-7778

Attorneys for Chapter 7 Trustee
A. CISNEROS

FRALEY & ASSOCIATES
Franklin R. Fraley, Jr.—SBN 151879
Ste. 702
617 W. 7th St.
Los Angeles CA 90017
Tel    213.550.4000
cmecf@fraleylaw.com

Attorneys for Secured Creditor
REVERE FINANCIAL CORPORATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

(Riverside Division)

| | |
|---|---|
| In re:<br><br>DOUGLAS J. ROGER, M.D., INC., APC,<br><br>Debtor. | **Bankruptcy Case No. 6:13-bk-27344-MH**<br><br>**Chapter 7**<br><br>**Assigned to:**<br>    **Hon. Mark D. Houle**<br>    **Ctrm. 303**<br><br>**SECOND JOINT MOTION AND MOVING MEMORANDUM BY CHAPTER 7 TRUSTEE AND REVERE FINANCIAL CORPORATION FOR ORDER APPROVING SETTLEMENT BETWEEN CHAPTER 7 TRUSTEE AND REVERE FINANCIAL CORPORATION; AND**<br><br>**APPENDIX A**<br><br>**Date:    2018-02-14**<br>**Time:    11:00 a.m. PST**<br>**Place:    Ctrm. 303** |

# TABLE OF CONTENTS

I.  JOINT MOTION ................................................................................................ 1

    A.  Introduction ......................................................................................... 1

II. STATEMENT OF FACTS ................................................................................ 2

    A.  RFC's Acquisition of the Roger/BLP Loans .................................... 2

    B.  RFC's Security Interest in All of DJRI's Assets ............................... 3

        1.  The Collateral ........................................................................... 3

        2.  Default Terms ........................................................................... 4

    C.  The State Court's Determination re DJRI's Liability on
        Roger/BLP Loans and Validity of DJRI Security Agreement ............... 4

    D.  The Roger Defendants' Refusal to Cooperate in the State-Court
        Action Caused Extensive Litigation in the State Court ........................ 5

    E.  Litigation Continues in Bankruptcy .................................................. 5

    F.  RFC's Claim ...................................................................................... 6

    G.  Other Possible Secured Creditors ..................................................... 7

    H.  The Assets In The DJRI Bankruptcy Estate ..................................... 7

    I.  What Is The Subject Of The Compromise ........................................ 8

    J.  Summary of Settlement Terms .......................................................... 8

        1.  The Estate's Assets .................................................................. 3

        2.  Disposition of the Estate's Assets ......................................... 11

        3.  Dismissal of RFC's Appeal .................................................. 13

        4.  RFC/Receiver ....................................................................... 13

        5.  Standard Terms ..................................................................... 16

    K.  The DJRI Trustee's Analysis of RFC's Claim and the Need to Settle ............... 16

        1.  End Litigation With RFC ...................................................... 16

        2.  The Carve-Out Will Confer an Immediate Benefit to the Estate ............. 18

        3.  Create the Prospect of Potential Returns to the Estate with
        No Risks or Further Administrative Expenses Incurred ......................... 19

-i-

4.    Efficient Administration of Bankruptcy Estate
And No Prejudice To Others ................................................................. 19

L.    The DJRI Trustee's Analysis Of Claims Being Transferred
To Liquidating Trust ..................................................................... 20

M.    Efforts to Settle Disputes with RFC .................................................. 22

N.    This Court Already Approved a Similar Settlement by
RFC and the Roger Trustee ............................................................. 23

III.    LEGAL ARGUMENT ................................................................. 23

A.    The Bankruptcy Court Has Discretion To Approve Settlement
Contracts ................................................................................... 23

B.    A Settlement That Falls Within The Lowest Point In The Range Of
Reasonableness Should Be Approved ............................................... 23

C.    Ninth Circuit Factors To Consider In Approving A Settlement ........... 24

D.    Under The A&C Factors, The Bankruptcy Court Should
Approve The Settlement Agreement ................................................. 24

1.    Factors (a) and (c):  The probability of success in the litigation
(factor a) and the complexity of the litigation involved, and
the expense, inconvenience, and delay necessarily attending
it (factor c) ................................................................................ 25

2.    Factor (b):  The difficulties, if any, to be encountered in the
matter of collection ................................................................... 26

3.    Factor (d):  The paramount interest of the creditors and a
proper deference to their reasonable views in the premises ............. 27

E.    This Court Already Found That Such Evidence Meets The A&C Factors ........... 28

IV.    CONCLUSION ........................................................................ 30

APPENDIX A ................................................................................ 32

-ii-

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Blair
538 F.2d 849 (9th Cir. 1976)..........................................................................................24

In re Lee Way Holding Co.
120 B.R. 881 (Bankr. S.D. Ohio 1990)..........................................................................16

In re Walsh Construction, Inc.
669 F.2d 1325 (9th Cir. 1992)..........................................................................................24

In re W.T. Grant & Co.
699 F.2d 599 (2nd Cir. 1983)...................................................................................23, 24

Martin v. Kale (In re A & C Properties)
784 F.2d 1377 (9th Cir. 1986)...................................................................................23, 24

Matter of Carla Leather, Inc.
44 B.R. 457 (Bankr. S.D.N.Y. 1984)..............................................................................24

Matter of Walsh Const., Inc.
669 F.2d 1325 (9th Cir. 1982)..........................................................................................24

Newman v. Stein
464 F.2d 689 (2nd Cir. 1972)..........................................................................................23

United States v. Alaska National Bank (In re Walsh Constr., Inc.)
669 F.2d 1325 (9th Cir. 1982)..........................................................................................24

## FEDERAL STATUTE

Federal Rule of Bankruptcy Procedure 9019(a)............................................................23

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

# I.    JOINT MOTION

## A.    Introduction

Arturo Cisneros, the Chapter 7 Trustee (the "DJRI Trustee"), in his sound business judgment has investigated, evaluated, and analyzed the proposed settlement with Secured Creditor Revere Financial Corporation ("RFC") (the "RFC Settlement") and determined that the RFC Settlement is fair and equitable and in the best interest of the estate.  As a matter of law, a bankruptcy court should approve a compromise by a chapter 7 trustee that is fair and equitable and within the lowest range of reasonable.  The RFC Settlement more than meets this test:

- • The RFC Settlement confers at least a $125,000 cash benefit on the estate, plus an additional benefit of 25% net proceeds from the assets of a liquidating trust.

- • RFC has guaranteed that the estate will receive the $45,000 Carve-Out to use for distributions even if another creditor claims senior rights in the Carve-Out.

- • The RFC Settlement eliminates the need for the estate to incur any more administrative expenses to prosecute any avoidance actions and provides the estate with the potential to receive future returns at no risk or cost—RFC, as liquidating trustee, will prosecute the litigation claims as liquidating trustee and advance all expenses to do so at no risk to the bankruptcy estate.

- • The RFC Settlement ends all litigation with RFC, including uncertain and expensive litigation with RFC on RFC's claim and RFC's Ninth Circuit appeal seeking reversal of this Bankruptcy Court's order vacating the dismissal of this bankruptcy.

- • Indeed, if the Ninth Circuit reverses that order and dismisses this bankruptcy, the DJRI Trustee anticipates further litigation, administrative expenses, and confusion regarding the effect of that reversal (e.g., Will the past two-plus years be undone?  What will happen to the cash-on-hand in the estate? Will the DJRI Trustee have to return all cash back to a defunct medical corporation? Will any administrative expenses or any claims get paid? etc.)  The RFC Settlement guarantees that this bankruptcy remains intact for sufficient time to enable the estate to receive and disburse the settlement funds to creditors of the estate.

-1-

1  The DJRI Trustee/RFC, therefore, jointly move this Bankruptcy Court for an order approving the

2  settlement.  This Bankruptcy Court should approve the settlement because the settlement provides

3  a far greater benefit to the bankruptcy estate than litigating with RFC over RFC's claims against

4  the bankruptcy estate and/or the Ninth Circuit appeal.

5  **II.     STATEMENT OF FACTS**

6  **A.     RFC's Acquisition of the Roger/BLP Loans.**

7  Secured Creditor Revere Financial Corporation ("RFC") filed a state court action entitled

8  Revere Fin. Corp. v. Roger, Case No. INC 092 308 (Super. Ct. Cal., Cty. Riverside, Indio Branch,

9  filed 2009-12-29) [the "State Court Action"], more than seven years ago to collect the balances

10  due on two loans:

11  •     **The Roger Loan**:  A loan by Non-Party 1st Centennial Bank (RFC's

12  predecessor-in-interest) to Douglas J. Roger:

13  o     which Debtor Douglas J. Roger M.D., Inc., APC ("DJRI"), Roger's

14  wholly-owned/controlled medical corporation, guaranteed; and

15  o     for which both Roger and DJRI pledged all of their assets as

16  security (the "DJRI Security Agreement"); and

17  •     **The BLP Loan**:  A loan by the Bank to Baleine, LP ("BLP"), in which

18  Nicole Ebarb was a general partner, which both Roger and DJRI guaranteed. (Roger,

19  DJRI, BLP, and Ebarb, are collectively referred to as the "Roger Defendants").

20  Moving Request for Judicial Notice for Second Joint Motion by Chapter 7 Trustee and Revere

21  Financial Corporation for Order Approving Settlement Between Chapter 7 Trustee and Revere

22  Financial Corporation, dated 24 January 2018 [the "Moving RJN"], Ex. 1 at 9 & 19–55.

23  RFC acquired all right, title, and interest in the Roger/BLP Loans and related documents

24  by purchasing the Roger/BLP Loans and related documents from the Federal Deposit Insurance

25  Corporation, which became receiver of the Bank when the Bank failed.  Moving RJN, Ex. 1 at 15

26  & 61–72.

27

28

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

**B.**     **RFC's Security Interest in All of DJRI's Assets.**

In conjunction with the Roger Loan, Roger and DJRI pledged all of their assets, to the

Bank to secure the Roger Loan.  Moving RJN, Ex. 1 at 11–12 & 28–34.

**1.**     **The Collateral**

The express terms of the DJRI Security Agreement defined the collateral that Roger and

DJRI pledged as security for the Roger Loan as:

> The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:
>
> **All Debtor's Assets, including all Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles**
>
> In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
> (A)     All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the Collateral described herein, whether added now or later.
>
> (B)     All products and produce of any of the property described in this Collateral section.
>
> (C)     All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.
>
> (D)     All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.
>
> (E)     All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media

Id.

**2.     Default Terms[1]**

Pursuant to the DJRI Security Agreement, upon default of the Roger Loan:

•      The Bank would have immediate rights to all of the Collateral;

•      The Bank would have the right to appoint a receiver; and

•      Roger and DJRI agreed to pay all of the expenses that the Bank incurred to maintain and preserve the Collateral, including all expenses for a receiver of the Collateral.  Id.

**C.     The State Court's Determination re DJRI's Liability on Roger/BLP Loans and Validity of DJRI Security Agreement.**

After years of extensive litigation in the State Court, the State Court granted two motions for summary adjudication, finding that the Roger Defendants had breached the Roger/BLP Loans—i.e., that:

•      Roger, as borrower, and DJRI, as guarantor, are jointly and severally liable to RFC on the Roger Loan;

•      ***The DJRI Security Agreement is a valid, enforceable, binding agreement that Roger and DJRI breached***;

•      RFC is entitled to foreclose RFC's security interest in all of Roger's and DJRI's assets based on the DJRI Security Agreement; and

•      BLP, as borrower, Roger, as guarantor, DJRI, as guarantor, and Ebarb, as general partner in BLP at the time of the BLP Loan, are all jointly and severally liable to RFC on the BLP Loan.

Moving RJN, Ex. 1 at 15, Exs. 2–3 at 106–121, & Moving Declaration of Franklin R. Fraley, Jr. for Second Joint Motion by Chapter 7 Trustee and Revere Financial Corporation for Order Approving Settlement Between Chapter 7 Trustee and Revere Financial Corporation, dated 24 January 2018 [the "Moving Fraley Decl."], ¶¶ 11–14 at 4.

---

[1]If the RFC Settlement is not approved by the Court, nothing in the Settlement Contract, the Liquidating Trust Contract, or this Motion shall bind either Party or constitute an admission by either Party.

**D.     The Roger Defendants' Refusal to Cooperate in the State-Court Action Caused Extensive Litigation in the State Court.**

Rather than the State Court Action being a simple collection action, the Roger Defendants used every evasive tactic possible to cause years of litigation by:

- Litigating and re-litigating issues repeatedly;

- Refusing to respond to discovery, refusing to even admit the genuineness of the loan documents that the Roger Defendants signed, and refusing to admit any facts, forcing RFC to file over one-half dozen motions to compel and respond to various meritless motions for protective orders/motions to quash by the Roger Defendants;

- Refusing to produce documents or disclose the Roger Defendants' assets to RFC, forcing RFC to file a motion for the appointment of a receiver, which the State Court granted; and

- Refusing cooperate with the court-appointed receiver ("Receiver"), leading to a lengthy and expensive contempt trial and Roger's and Ebarb's spending over forty days in jail.

Moving Fraley Decl., ¶¶ 4–10 at 2–3. The Roger Defendants' actions caused RFC and the Receiver to incur substantial fees to address each of the Roger Defendants' tactics. Moving RJN, Ex. 1 at 6–17 & Ex. 7 at 139. The docket for the State Court Action spans *162* pages. The pleadings filed with the State Court fill twenty banker's boxes, spanning approximately *40,000* pages. Moving Fraley Decl., ¶¶ 17–18 at 5 & Moving RJN, Ex. 8 at 169–330.

**E.     Litigation Continues in Bankruptcy.**

Since DJRI filed bankruptcy in October 2013, litigation in this bankruptcy case has been extensive, including emergency motions regarding the release of Roger (as DJRI's president) from jail, an application and a motion to dismiss this bankruptcy for abuse of process, an application to vacate the dismissal, contested matters related to carve-outs with other creditors who claim security interests in DJRI's assets, motions for relief from stay and abstention, objections to motions to approve settlements, and appeals to the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit.

-5-

1  Indeed, as of 23 January 2018, the docket in this bankruptcy contains over 520 entries, many of

2  which involve RFC.  Moving Declaration of Arturo Cisneros for Second Joint Motion by Chapter

3  7 Trustee and Revere Financial Corporation for Order Approving Settlement Between Chapter 7

4  Trustee and Revere Financial Corporation, dated 24 January 2018 [the "Moving Cisneros Decl."],

5  ¶¶ 4–5 at 1–2.

6  **F.      RFC's Claim**

7          On 20 July 2015, RFC filed a proof of claim.  Moving RJN, Ex. 1.  On the cover page of

8  the proof of claim form, the form asks RFC to state the amount of RFC's claim "***as of the date***

9  ***case filed***."  Id., Ex. 1 at 6.  So, on that cover page, RFC stated that the amount of RFC's claim

10  "***as of the date [that DJRI's bankruptcy] case [was] filed***" was $2,935.429.17.  Id.  However, in

11  the body of RFC's proof of claim, RFC explained in detail that the actual amount of RFC's claim

12  against DJRI was much higher because RFC continued to incur fees/expenses and the Roger/BLP

13  Loans continued to accrue interest after DJRI filed bankruptcy.  Id., Ex. 1 at 16–17.  Specifically,

14  RFC explained that ***as of 20 July 2015***, RFC's claim equaled **$5,573,992,** broken down as

15  follows:

16              •      $1,388,564 for principal/interest due on the Roger/BLP Loans;

17              •      $2,628,532.21 for RFC's attorneys' fees/expenses as of 30 June 2015; and

18              •      $1,556,895.44 for the Receiver's fees/expenses as of 30 June 2015.[2]

19  Id., Ex. 1 at 16.  RFC contends that:

20              •      RFC has a senior, first priority security interest in all of DJRI's assets,

21      including all assets currently in the estate (except in avoidance claims); and

22              •      ***The amount of RFC's claim continues to grow larger and larger each***

23      ***day RFC must litigate in this bankruptcy and/or on various appeals***.

24  Moving Fraley Decl., ¶¶ 23–24 at 6.  RFC has the largest secured claim in DJRI's bankruptcy.

25  Id.

26

27  _____

28      [2]The loan documents for the Roger/BLP Loan entitle RFC to collect these attorneys and
receiver's fees/expenses from the Roger Defendants, including DJRI.

**G.    Other Possible Secured Creditors**

The only other creditors who claim to have a potential security interest in DJRI's assets are:

•    Coachella Medical Management, ("CMM"), who claims a security interest in DJRI's accounts receivables (which have been abandoned) even though the security agreement from which CMM's purported security interest arose only grants CMM a security interest "in and to all fees due CMM." Moving Fraley Decl., ¶ 26 at 6.

•    Bank of Southern California ("BSC"), who claims a contingent security interest in DJRI's bankruptcy, but who has not filed a proof of claim. Id., ¶ 27 at 7.

RFC disputes the validity, priority, and extent of CMM's and BSC's purported security interest claims. Id., ¶ 8 at 7. However, as the DJRI Trustee/RFC explain below, the settlement agreement between RFC and the DJRI does not affect CMM's or BSC's ability to dispute or litigate the validity, priority, or extent of their security interest with RFC.

**H.    The Assets In The DJRI Bankruptcy Estate**

The assets of the DJRI Bankruptcy Estate are:

•    **Encumbered Cash**:  Cash that the DJRI Trustee holds and that RFC claims as collateral;

•    **Unencumbered Cash**:  $185,000 in cash from the sale of two avoidance claims;

•    **Uncertain Cash**:  Potential tax refunds, if any; and

•    **Uncertain Claims**:  Remaining claims that the DJRI Trustee must prosecute at the DJRI Trustee's own risk and at the estate's expense, but which the estate does not have sufficient assets to fund.

Moving Cisneros Decl., ¶ 6 at 2.

**I.      What Is The Subject Of The Compromise?**

The DJRI Trustee disputes:

•      The amount of RFC's claim and the extent and priority of RFC's security agreement; and

•      RFC's contention that this Bankruptcy Court erred in vacating the dismissal of DJRI's bankruptcy, an issue that is currently on appeal in the Ninth Circuit (the "DJRI Vacate Dismissal Appeal"). Id., ¶ 7 at 2.

Without a settlement with RFC, the DJRI Trustee must incur the administrative expense to litigate:

•      An objection to RFC's claim, which comes with significant risks; and

•      The DJRI Vacate Dismissal Appeal (with the deadline for the DJRI Trustee to file a brief fast approaching).

Id., ¶ 8 at 3.  The settlement ends these disputes.  Id.

**J.      Summary of Settlement Terms**

Because the settlement contract is voluminous and technical, the DJRI Trustee/RFC summarize only key terms here:[3]

**1.      The Estate's Assets**

The settlement contract identifies all assets of the estate and then certain subsets of those assets to prescribe how the DJRI Trustee will treat those assets:

•      *All "Assets"* constitute all property and all proceeds of all property that the estate ever holds, even if subject to the claims of others.  App. A, Settlement Contract, § 4.6 at 4.

•      *All "Claims"* constitute all claims that the estate ever holds.  App. A, Settlement Contract, § 4.6 at 4 & § 4.12 at 5.

---

[3]The Settlement Contract, attached as Appendix A, and not this summary, set forth the terms of the settlement between the parties and will govern the parties' rights and obligations. The DJRI Trustee and RFC encourage all parties-in-interest to review the Settlement Contract carefully.

• ***All tax attributes*** constitute the tax attributes of DJRI.  App. A, Settlement Contract, § 4.6 at 4.

• ***The DJRI Estate/DJRI-DBP Claim and all DJRI Estate/DJRI-DBP Claim Sale Proceeds*** constitute an avoidance claim that the DJRI Trustee alleged in an adversary proceeding and the $105,000 in proceeds that the DJRI Trustee received from an auction of that claim.  App. A, Settlement Contract, § 4.6 at 4 & §§ 4.18-4.19 at 6.

• ***The DJRI Estate/OIC Claim and all DJRI Estate/OIC Claim Sale Proceeds*** constitute an avoidance claim that the DJRI Trustee alleged in an adversary proceeding and the $80,000 in proceeds that the DJRI Trustee received from an auction of that claim.  App. A, Settlement Contract, § 4.6 at 4 & §§ 4.22-4.23 at 7.

• ***The DJRI Estate/Trustee-Professionals Claims*** constitute whatever claims the DJRI Estate might have against the DJRI Estate's own professionals of unknown value.    App. A, Settlement Contract, § 4.6 at 4 & § 4.24 at 7.

• ***The RFC Claims*** constitute all claims that RFC had standing, as a creditor of DJRI, to assert against anyone other than DJRI pre-petition, but which the DJRI Trustee received by operation of law when DJRI filed the petition.  App. A, Settlement Contract, § 4.6 at 4 & § 4.46 at 12.

• ***The Receiver Claims*** constitute all claims that RFC had standing, as a creditor of DJRI, to assert against anyone other than DJRI pre-petition, but which the DJRI Trustee received by operation of law when DJRI filed the petition.  App. A, Settlement Contract, § 4.6 at 4 & § 4.40 at 10.

• ***Distributions from the Liquidating Trust to the DJRI Trustee*** constitute the cash distributions from the Liquidating Trustee to the DJRI Estate, App. A, Settlement Contract, § 4.6 at 4, which are:

-9-

o   ***The DJRI Estate Priority Distribution*** constitutes the first $75,000 of proceeds that the Liquidating Trust recovers on any claims the Liquidating Trustee prosecutes, before the Liquidating Trustee pays any expenses, but after the Liquidating Trustee pays any taxes.   App. A, Settlement Contract, § 4.6 at 4 & Liquidating Trust, § 3.5 at 2.

o   ***All other distributions from the Liquidating Trust*** which constitute 25% of all proceeds that the Liquidating Trust recover on any claims the Liquidating Trustee prosecutes, after the Liquidating Trustee pays all expenses and after the Liquidating Trustee pays any taxes.   App. A, Settlement Contract, § 4.6 at 4 & Liquidating Trust, § 3.2 at 1.

In other words, the DJRI Estate will receive the first $80,000 the Liquidating Trust recovers, without regard to expenses, but after taxes, and 25% of all the money the Liquidating Trustee recovers overall, after expenses and taxes.

•   ***All other Proceeds that the DJRI Trustee recovers on any claims*** that the Liquidating Trustee transfers back to the DJRI Estate pursuant to the Liquidating Trust Agreement and that the DJRI Trustee chooses not to abandon, but to prosecute.   App. A, Settlement Contract, § 4.6 at 4 & Liquidating Trust, § 3.14 at 4, § 3.17 at 5, & § 5.3.1 at 11 (first bullet on page).

•   ***The DJRI Estate Cash Collateral*** constitutes $183,480.95 cash on hand that the DJRI Trustee has collected and holds for the DJRI Estate in which RFC claims a security interest that the DJRI Trustee disputes at least in part.   App. A, Settlement Contract, § 4.6 at 4 & § 4.17 at 6.

•   ***The Carve-Out*** constitutes $45,000 of the DJRI Estate Cash-Collateral that RFC will release from RFC's security interest to the DJRI Estate and, if any other person claims a security interest in that money, either clear that claimed security interest through litigation or advance the $45,000 to the DJRI Estate to ensure that the DJRI Estate receives the benefit of the Carve-Out.   App. A, Settlement Contract, § 4.6 at 4 & § 4.11 at 5.

-10-

2.    **Disposition of the Estate's Assets**

- ***Administer According to the Bankruptcy Code***:  The DJRI Trustee will pay allowed administrative and unsecured claims with:

  o    *all Proceeds of the tax attributes of DJRI;*

  o    *all DJRI Estate/DJRI-DBP Claim Sale Proceeds;*

  o    *all DJRI Estate/OIC* Claim Sale Proceeds;

  o    all Proceeds of the DJRI Estate/Trustee-Professionals Claims;

  o    all of the Carve-Out;

  o    all distributions from the Liquidating Trust to the DJRI Trustee, including both the DJRI Estate Priority Distribution and 25% of all net proceeds of the Liquidating Trust overall; and

  o    all Proceeds from the DJRI Trustee's liquidation of any Liquidating Trust Asset that the Liquidating Trustee transfers back to the DJRI Estate pursuant to the Liquidating Trust Agreement and that the DJRI Trustee chooses not to abandon,

which total at least $235,000, but should increase to at least $310,000 with the DJRI Estate Priority Distribution and even more with the DJRI Estate's 25% share of all Liquidating Trust net proceeds.  App. A, Settlement Contract, § 6.7.1 at 20-21.

- ***Prosecute Liquidating Trust Assets***:  The Parties agree to create a Liquidating Trust that will receive all claims of the DJRI Estate except those expressly excluded.  App. A, Settlement Contract, § 6.6 at 20 & Liquidating Trust, § 5.2.2 at 7.

  o    ***Liquidating Trustee***:  RFC or its nominee will act as the Liquidating Trustee of the Liquidating Trust.  App. A, Liquidating Trust, § 5.2.6.1 at 7.

-11-

o    ***Liquidating Trustee Duties***:  The Liquidating Trustee will have full discretion to decide which Liquidating Trust Assets, i.e., which claims, to investigate and liquidate by prosecuting litigation.   App. A, Liquidating Trust, § 5.3.1 at 10-12.

o    ***Claims Transferred back to DJRI Trustee***:    If the Liquidating Trustee decides not to prosecute a given Liquidating Trust Asset, i.e., a given claim, the Liquidating Trustee will re-assign that claim back to the DJRI Trustee to liquidate or abandon as the DJRI Trustee chooses.  App. A, Liquidating Trust, § 3.14 at 4, § 3.17 at 5, & § 5.3.1 at 11 (first bullet on page).

o    ***Liquidating Trust Expenses***:    To the extent that the Liquidating Trustee decides to investigate/liquidate a Liquidating Trust Asset, the Liquidating Trustee will advance all expenses to do so at the Liquidating Trustee's sole risk subject to reimbursement from the proceeds of claims that the Liquidating Trust recovers and then only after first paying the DJRI Estate Priority Distribution.  App. A, Liquidating Trust, § 5.3.5.2 at 14-15.

o    ***Distributions***:   The Liquidating Trustee will use/distribute proceeds that the Liquidating Trust recovers from liquidating claims by:

▪    First, paying any taxes;

▪    Second, making a preferred distribution of $80,000 of gross proceeds (i.e., before reimbursing RFC for any expenses and before distributing any proceeds to RFC) to the DJRI Estate;

▪    Third, reimbursing RFC for all expenses; and

▪    Fourth, making an equalizing distribution of net proceeds to RFC so that the DJRI Estate has received 25% of all net proceeds and RFC has received 75% of all net proceeds; and

1    ▪    Fifth, distributing 25% of all remaining proceeds to
2    the DJRI Estate and 75% to RFC.

3    App. A, Liquidating Trust, §§ 5.4.1-5.4.4.

4    •    ***Abandon Assets***:   The DJRI Trustee will abandon unliquidated
5    assets subject to various exceptions, but including all claims that the DJRI Trustee
6    chose not to prosecute, but that the Receiver or RFC had standing to prosecute
7    before the bankruptcy.  App. A, Settlement Contract, § 6.8 at 21.

8    3.   **Dismissal of RFC's Appeal**

9    The DJRI Trustee and RFC will stipulate to dismiss the DJRI Vacate Dismissal
10   Appeal.  App. A, Settlement Contract, § 6.10.2 at 24.

11   **4.    RFC/Receiver**

12   •    ***Allowance of RFC's Claim***:   The DJRI Trustee agrees to allow a
13   $5,500,000 claim for RFC, of which $4,000,000 will be secured claim and
14   $1,500,000 will be general unsecured claim (the "RFC Claim") (which is identical
15   to RFC's allowed claim in the Roger Bankruptcy).  App. A, Settlement Contract, §
16   6.9.1 at 22.

17   •    ***Amendment, Assignment, and Allowance of Receiver's Claim***:

18   o    The Receiver will amend the Receiver's claim to state the
19   full amount due.

20   o    The Receiver assigns the Receiver's claim to RFC.

21   o    The DJRI Trustee allows the Receiver's claim in full, as
22   amended.

23   o    The DJRI Trustee will make no distributions on the
24   Receiver's claim, other than to the extent that RFC has included the
25   Receiver's fees/expenses in the RFC Claim, i.e., the statement/allowance of
26   the Receiver's separate claim will not increase the RFC Claim any further.

27   App. A, Settlement Contract, § 6.9.4 at 23.

28

-13-

• **Reduction of RFC Claim**:  Any payments that RFC receives from any other source (including BLP and/or Roger) and any net amounts that RFC receives from the liquidation of any of BLP's, DJRI's, or Roger's, bankruptcy estates or the liquidating trusts for DJRI's and Roger's bankruptcy estates will reduce the RFC Claim (in both DJRI's Bankruptcy by this proposed settlement in this case and the Roger Bankruptcy by an approved settlement in that case). App. A, Settlement Contract, § 6.9.2 at 22.

• **Res Judicata/Collateral Effect of Allowance**:

o **DJRI Estate/RFC**:  RFC's allowed claim merely resolves the issues between the DJRI Trustee and RFC and only affects the amount/percentage that RFC will receive from distributions from the estate, if any.  App. A, Settlement Contract, § 5.5 at 14 & § 6.16.2 at 29.

o **The Roger Defendants**:  No portion of the Settlement Contract, including the amount/allowance of RFC's Claim, will bind, constitute evidence for or against, or have any res judicata or collateral estoppel effect on the Roger Defendants in the State Court Action or the adversary proceedings between RFC and the Roger Defendants.  App. A, Settlement Contract, § 6.16.2 at 29 (first bullet).

o **Adverse Secured Creditors (CMM/BSC)**:  No portion of the Settlement Contract, including the amount/allowance of RFC's Claim and the proposed distribution of the DJRI Estate Cash Collateral, will have any res judicata or collateral estoppel effect *on any secured creditor, including CMM or BSC, who claims a competing security interest in the* DJRI Estate Cash Collateral; the DJRI Trustee will hold the DJRI Estate Cash Collateral subject to an order resolving any competing claims.  App. A, Settlement Contract, § 6.16.2 at 29 (second bullet).

- ***RFC's Security Interest***:

    o    The DJRI Trustee will not contest the validity, perfection, and scope of the RFC Security Interest.

    o    The DJRI Trustee will not contest that the RFC Security Interest secures the RFC Claim.

    o    The DJRI Trustee agrees that RFC's security interest shall be preserved against all of the property of the bankruptcy estate (other than the bankruptcy estate's rights pursuant to the Settlement Contract).

    o    The DJRI Trustee will grant RFC an Adequate Protection Lien (together with the DJRI Security Interest, the "Liens").  To the extent that the Liens are first priority, perfected, enforceable, attached, and recorded, RFC need not, but may, file or record further documents to continue the priority, perfection, enforceability, and attachment effect of the Liens.

    o    The DJRI Trustee waives any right to ask the Bankruptcy Court to impose a lien under Bankruptcy Code section 364 or to surcharge RFC's collateral under Bankruptcy Code section 506(c).

App. A, Settlement Contract, § 6.4 at 16-19.

- ***Claim Objections***:  RFC maintains the right to object to any claims. The DJRI Trustee will cooperate with RFC on all claim objections.    App. A, Settlement Contract, § 6.9.6 at 24.

- ***Relief from Stay***:  The DJRI Trustee grants RFC and the Receiver relief from stay, including:

    o    to prosecute RFC's state-court action against DJRI to judgment, including all post-judgment proceedings, i.e., for attorneys' fees, appeals, etc., but not to enforce the judgment;

-15-

> o      to complete proceedings to liquidating the Receiver's
>
> fees/expenses and discharge the Receiver in the State Court; and
>
> > o      to prosecute all abandoned claims .
>
> App. A, Settlement Contract, § 6.11 at 25.

**5.      Standard Terms**

The Settlement Contract contains other, common provisions, such as each party's bearing his/its own attorney's fees and costs, no representations or warranties as to tax issues, each party paying his/her own taxes, an exchange of mutual releases (with a waiver of California Civil Code section 1542), and standard terms (such as choice-of-law provisions).  <u>See</u>, <u>generally</u>, App. A, Settlement Contract.

**K.      <u>The DJRI Trustee's Analysis of RFC's Claim and the Need to Settle.</u>**[4]

The DJRI Trustee has analyzed and considered the following factors and used his best business judgment to determine that the settlement with RFC is in the best interest of the estate:

**1.      End Litigation With RFC**

•      Settlement will end extensive, continued, and expensive litigation between RFC and the DJRI Trustee on:

> o      ***RFC's Claim***:  The bankruptcy estate has limited assets to fund litigation against RFC regarding RFC's claim.  Further litigation with RFC on RFC's claim will only further burden the estate with increased administrative expenses that the estate cannot afford.  The DJRI Trustee has analyzed RFC's claim by:
>
> > ▪      reviewing the voluminous docket in the State Court Action, which shows that litigation in State Court was extensive; and
> >
> > ▪      reviewing an itemized summary of RFC's attorneys' and the Receiver's fees/expenses, which appear to be fees/expenses that were actually incurred in connection with litigating the State Court Action.

---

[4]For this section, see Moving Cisneros Decl., ¶ 9(i)–(iv) at 3–7.

After this analysis, the DJRI Trustee has determined that some legitimate basis exists for RFC's claim.  So, a plausible risk exists that the DJRI Trustee may lose if the DJRI Trustee challenges RFC's claim.

o  ***The DJRI Vacate Dismissal Appeal***:    Settling with RFC will ensure that RFC dismisses the DJRI Vacate Dismissal Appeal, guarantee that this Bankruptcy Court's decision to vacate the dismissal of DJRI's bankruptcy does not get reversed, and prevent the possible chaos of having the past years of bankruptcy proceedings being undone.  Absent settlement:

▪  The DJRI Trustee would incur significant administrative expenses to defend this Bankruptcy Court's decision to vacate the dismissal of DJRI's bankruptcy in the Ninth Circuit.[5]

▪  Simply defending the DJRI Vacate Dismissal Appeal will push this estate into further administrative insolvency, all for no return (even if the DJRI Trustee prevails).

▪  The DJRI Trustee risks losing the DJRI Vacate Dismissal Appeal, in which case, the DJRI Trustee will have to incur further, significant administrative expenses to analyze, address, and handle the ensuing uncertainty that undoing this bankruptcy will cause.

▪  If the DJRI Trustee loses the DJRI Vacate Dismissal Appeal, it is uncertain whether any administrative claims will get paid, whether any unsecured creditors will get paid, whether the DJRI Trustee must return all cash on hand to the defunct medical corporation debtor, etc.

---

[5]Arguably, the DJRI Trustee, as representative of the bankruptcy estate, is the only party with standing to respond to the DJRI Vacate Dismissal Appeal and defend this Bankruptcy Court's decision.  So, even if Roger were to respond to the DJRI Vacate Dismissal Appeal, the Ninth Circuit may strike any response by Roger for lack of standing.  Indeed, RFC has already challenged the standing of Roger to bring an appeal related to the bankruptcy estate of Baleine, LP, arguing that only the chapter 7 Trustee of BLP's bankruptcy estate had standing to bring that appeal.  The Ninth Circuit has already agreed with RFC and has dismissed that appeal for lack of standing.  (Indeed, the Ninth Circuit has also already agreed with RFC on another matter and dismissed a second appeal by Roger for lack of jurisdiction).

1    &#9642;    So, in the best-case scenario, the DJRI Trustee will incur

2    additional substantial administrative expenses to win the DJRI Vacate

3    Dismissal Appeal, but the estate will receive no return and, indeed, to the

4    contrary, will dive deeper into administrative insolvency.

5    &#9642;    In the worst-case scenario, the DJRI Trustee incurs

6    additional substantial administrative expenses and loses the DJRI Vacate

7    Dismissal Appeal, the bankruptcy becomes undone, further litigation

8    ensues, and no one gets paid.

9    &#9642;    Thus, no reason exists for the DJRI Trustee to incur the

10   administrative expense or risk to continue to prosecute the DJRI Vacate

11   Dismissal Appeal.

12   **2.    The Carve-Out Will Confer an Immediate Benefit to the Estate**

13   &#8226;    The DJRI Trustee has analyzed the DJRI Security Agreement and the State

14   Court's summary adjudication ruling finding that the DJRI Security Agreement was a

15   valid security agreement.    Further, the DJRI Trustee has considered this Bankruptcy

16   Court's denial of the DJRI Trustee's motion for a surcharge of RFC's collateral.  Based on

17   this analysis, the DJRI Trustee believes that there is a high probability that the assets that

18   are subject to the Carve-Out are RFC's collateral such that RFC's granting of the Carve-

19   Out will confer an immediate benefit to the estate.

20   &#8226;    As further assurance that the estate will receive an immediate benefit under

21   the settlement, RFC expressly guarantees that the DJRI Trustee can use the Carve-Out for

22   distributions on administrative, priority, and unsecured claims.   If any other creditor

23   claims senior secured rights in that money, RFC will either/both defend those claims on

24   behalf of the estate and/or advance money to the estate to replace any amount in which

25   anyone else successfully claims senior secured rights, at no expense to the estate.  So, the

26   settlement also removes the DJRI Trustee from all potential litigation over secured

27   creditors' claims of priority in the estate's cash-on-hand—the Carve-Out.

28

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

• Given RFC's security interest, the bankruptcy estate may likely never obtain a better result against RFC than what the proposed settlement provides.

**3.      Create the Prospect of Potential Returns to the Estate with No Risks or Further Administrative Expenses Incurred.**

• The value of bankruptcy-estate property is not sufficient to satisfy the entire amount of RFC's secured claim.  So, if RFC prevails as the first-in-priority secured creditor on all bankruptcy-estate property, the only means by which the DJRI Trustee can recover funds from which to pay administrative expenses and unsecured creditors is through prevailing on additional avoidance actions.

• To date, the DJRI Trustee has collected $185,000 in unencumbered funds from the sale of two avoidance actions.  That amount does not exceed the amount of administrative expenses that the DJRI Trustee has incurred to date.

• RFC, however, has agreed to: (a) carve-out $45,000, at the expense of RFC's own collateral; and (b) make an $80,000 priority distribution from a liquidating trust, for a total disbursement of $125,000, from which the DJRI Trustee can make distributions to allowed administrative and unsecured creditors.

• By the settlement, RFC also takes on the responsibility, risk, and expense of litigating all remaining avoidance actions.  From the net proceeds, twenty-five percent will be paid to the bankruptcy estate, including a priority distribution before reimbursement of any of RFC's expenses to prosecute the avoidance actions or indemnification claims.  As such, there is a possibility that the bankruptcy estate recovers additional unencumbered funds without bearing any of the risk or expense.

**4.      Efficient Administration of Bankruptcy Estate And No Prejudice To Others.**

• Settlement will aid in the efficient administration of the bankruptcy estate because the settlement resolves the liquidation of all known assets.

• Settlement will not cause the Roger Defendants to suffer prejudice as the express terms of the settlement agreement provide that no portion of the settlement

-19-

agreement will constitute evidence for or against, and/or has any collateral estoppel or res judicata effect on the Roger Defendants in the State Court Action.

•      Settlement will not cause CMM or BSC to suffer prejudice as the express terms of the settlement agreement provide that no portion of the settlement agreement will have any collateral estoppel or res judicata effect on CMM's or BSC's ability to litigate the extent, validity, or priority of competing security interests in this Bankruptcy Court.

**L.      The DJRI Trustee's Analysis Of Claims Being Transferred To Liquidating Trust.[6]**

Of the claims that the DJRI Trustee will transfer to the Liquidating Trust as part of the proposed settlement, the DJRI Trustee has filed adversary proceedings on the following claims to avoid preferential and fraudulent transfers:

•      Cisneros v. American Express (6:15-ap-01303-MH)

•      Cisneros v. BWI Consulting, LLC (6:15-ap-01308-MH)

•      Cisneros v. Evans (6:15-ap-01306-MH)

•      Cisneros v. Kajan Mather & Barish (6:15-ap-01304-MH)

Further, the DJRI Trustee has a tolling agreement with Eric Freedman relating to a potential claim to avoid preferential and fraudulent transfers.

The DJRI Trustee faces difficulties prosecuting and/or collecting on each of these claims/potential claims:

•      Cisneros v. American Express:    American Express, as a national corporation, has extensive resources from which to litigate against the DJRI Trustee.  The DJRI Trustee, therefore, anticipates lengthy litigation with American Express.  The bankruptcy estate, on the other hand, has very limited assets from which to prosecute a lengthy proceeding for an uncertain return.

•      Cisneros v. BWI Consulting, LLC:  The DJRI Trustee has investigated the assets of BWI Consulting, LLC, a now defunct limited liability company and its main officer, Betty Sylvester.  The DJRI Trustee has determined from that investigation that

---

[6]For this section, see Moving Cisneros Decl., ¶ 10–12 at 7–8.

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

1    even if the DJRI Trustee were to prevail on this claim, the DJRI Trustee would face great

2    difficulty in ever collecting—i.e., no benefit to the estate.

3    • <u>Cisneros v. Evans</u>:  The DJRI Trustee has dismissed this claim.

4    • <u>Cisneros v. Kajan Mather & Barish</u>:  The DJRI Trustee has dismissed this

5    claim.

6    • <u>Potential claim against Freedman</u>:  Although the DJRI Trustee has not yet

7    filed an adversary proceeding against Freedman, Freedman has informed the DJRI Trustee

8    that Freedman would assert the following defenses:

9    o    The pre-petition transfers were made in the ordinary course of

10    business between DJRI and Freedman; and

11    o    Freedman was a good faith transferee of the post-petition transfers

12    with no knowledge of the bankruptcy filing.

13    Although the DJRI Trustee disputes Freedman's defenses, there is still a risk that the DJRI

14    Trustee will lose and that litigation against Freedman will be expensive.

15    Given such difficulties in prosecution/collection, based on the DJRI Trustee's best business

16    judgment, the value and benefit of these claims to the estate is uncertain.  While the DJRI Trustee

17    believes that these claims have merit, given the risks of prolonged litigation and the estate's

18    inability to fund extensive litigation, the DJRI Trustee does not know if/how the DJRI Trustee

19    will be able to continue with litigation on these claims and, absent settlement, may need to

20    abandon these claims.  The settlement with RFC will provide this estate with $125,000 in cash in

21    exchange for these claims, plus a potential 25% return in net proceeds in the future—all without

22    the DJRI Trustee having to incur the expense, or taking the risk, to litigate these claims.

23

24

25

26

27

28

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

**M.**    **Efforts to Settle Disputes with RFC.**[7]

The parties have spent significant time, effort, and money to negotiate a settlement:

•    Negotiations for a carve-out from RFC's collateral first began in November, 2013, just after DJRI filed this bankruptcy and continued intermittently until the DJRI Trustee/RFC began comprehensive settlement negotiations in November, 2015.

•    Comprehensive settlement negotiations between the DJRI Trustee and RFC have continued intermittently since November, 2015.

•    Over that time, RFC, RFC's attorneys, and the DJRI Trustee's attorneys attended a settlement conference with a sitting bankruptcy judge and communicated extensively directly with one another by e-mail and telephone to negotiate a settlement.

•    Throughout that time, RFC/the DJRI Trustee have settled some issues piece-meal and litigated others.

•    After some three years of negotiations and after overcoming various difficult barriers to settlement, the DJRI Trustee finally reached a comprehensive settlement with RFC in January 2017, which was subject to the Bankruptcy Court's approval (the "First Attempted Settlement").

•    In July 2017, however, the Bankruptcy Court did not approve the First Attempted Settlement, but instead compelled the parties into a piece-meal auction of some of the avoidance claims that were subject to the First Attempted Settlement.

•    Since then, the DJRI Trustee has incurred additional administrative expenses, first to outline a bidding process pursuant to the Bankruptcy Court's ruling on the First Attempted Settlement and then to renegotiate and restructure another settlement agreement with RFC.

•    Restructuring and renegotiating another settlement with RFC took extensive time, given the additional expenses, complications, and consequences of the piece-meal auction.

---

[7]For this section, see Moving Cisneros Decl., ¶ 13 at 8–9.

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC

1        &bull;    Now, four years after DJRI filed bankruptcy, after years of negotiations

2 and complications, the DJRI Trustee and RFC have reached another, comprehensive

3 settlement that serves the best interests of the bankruptcy estate and all creditors.

4 **N.**     **This Bankruptcy Court Already Approved a Similar Settlement by RFC and the**

5     **Roger Trustee.**

6     On 10 May 2016, this Bankruptcy Court approved a settlement between RFC and Helen

7 Frazer, the Chapter 7 Trustee for the bankruptcy estate of Debtor Douglas J. Roger (the "Roger

8 Trustee"). Moving RJN, Ex. 9 at 331–351. The terms and structure of that settlement are similar

9 to the terms and structure of the proposed settlement between RFC and the DJRI Trustee,

10 including the creation of a liquidating trust that will prosecute avoidance actions. Moving Fraley

11 Decl., ¶¶ 29–31 at 7.

12             **III.**     **LEGAL ARGUMENT**

13 **A.**     **The Bankruptcy Court has Discretion to Approve Settlement Contracts.**

14     Federal Rule of Bankruptcy Procedure 9019(a) authorizes a bankruptcy court to approve

15 settlements between the trustee and other parties. Specifically, Rule 9019(a) provides that:

16         On motion by the trustee and after notice and a hearing, the court may

17     approve a compromise or settlement. Notice shall be given to creditors, the

18     United States trustee, the debtor, and indenture trustees as provided in Rule 2002

19     and to any other entity as the court may direct.

20 **B.**     **A Settlement that Falls Within the Lowest Point in the Range of Reasonableness**

21     **Should be Approved.**

22     A bankruptcy court should approve a settlement as long as the settlement is fair and

23 equitable. Martin v. Kale (In re A & C Properties), 784 F.2d 1377, 1382 (9th Cir. 1986). To

24 determine whether or not a settlement is fair and equitable, a court does not need to decide

25 numerous questions of law and fact, but rather should ***canvas the issues to determine whether or***

26 ***not the settlement falls below the lowest point in the range of reasonableness***. In re W.T. Grant

27 & Co., 699 F.2d 599, 608 (2nd Cir. 1983), Newman v. Stein, 464 F.2d 689, 693 (2nd Cir. 1972);

28 Accord, In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1992). As long as a

1 settlement falls within the lowest point of reasonableness, a bankruptcy court should approve a

2 compromise. Id.

3    "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid

4 the expenses and burdens associated with litigating sharply contested and dubious claims." In re

5 A & C Properties, 784 F.2d at 1380-81.   Accordingly, in approving a settlement agreement, a

6 bankruptcy court need not conduct an exhaustive investigation of the claims sought to be

7 compromised.  United States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325,

8 1328 (9th Cir. 1982).   Further, the court should not conduct a "mini-trial" on the merits of the

9 underlying cause of action.  Matter of Walsh Const., Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); In

10 re Blair, 538 F.2d 849 (9th Cir. 1976).  The reason for this is simple—"[i]t is well established that

11 compromises are favored in bankruptcy."  In re Lee Way Holding Co., 120 B.R. 881, 891 (Bankr.

12 S.D. Ohio 1990).  A court should not substitute its own judgment for the judgment of the trustee.

13 Matter of Carla Leather, Inc., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).

14 **C.**    **Ninth Circuit Factors to Consider in Approving a Settlement.**

15    The Ninth Circuit has identified the following factors that a bankruptcy court may

16 consider in determining whether or not to approve a settlement:

17    (a)    the probability of success in the litigation;

18    (b)    the difficulties, if any, to be encountered in the matter of collection;

19    (c)    the complexity of the litigation involved, and the expense, inconvenience, and

20        delay necessarily attending it; and

21    (d)    the paramount interest of the creditors and a proper deference to their reasonable

22        views in the premises.

23 In re A & C Properties, 784 F.2d at 1381 (the "A & C Factors").

24 **D.**    **Under the A&C Factors, the Bankruptcy Court Should Approve the Settlement.**

25    Applying the A&C Factors, the Bankruptcy Court should approve the settlement:

26

27

28

1.   **Factors (a) and (c):  The probability of success in the litigation (factor a) and the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it (factor c)**.

Pursuing litigation with RFC will expose the estate to great challenges, risks, delays, expense, and difficulties relating to (1) the amount of RFC's claim, and the validity, extent, and scope of RFC's security interests and (2) whether or not the Ninth Circuit will dismiss this bankruptcy.

i.   **RFC's Claim:**

If the DJRI Trustee must pursue further litigation against RFC, the DJRI Trustee may lose on the following issues relating to RFC's claim:

• **The reasonableness of RFC's fees/expenses**:  The DJRI Trustee anticipates that the DJRI Trustee would have to litigate the issue of the reasonableness of RFC's attorneys' fees/expenses and the Receiver's fees/expenses before a State Court who has witnessed the Roger Defendants' conduct over five years.  Given that the State Court imposed $20,000 in monetary sanctions, imposed evidentiary sanctions, granted summary adjudication, heard over half a dozen ex parte applications by the Roger Defendants (many times during the same week), and held the Roger and Ebarb in contempt of court (resulting in Roger and Ebarb spending over forty days in jail), and awarded the Receiver $214,321.98 in fees/expenses for the contempt trial alone, arguing against RFC's/the receiver's fees/expenses before the State Court will be challenging.

• **The validity and scope of RFC's security interest in assets of the estate**: The estate will likely face great opposition on this issue because the State Court has already granted a motion for summary adjudication on the validity and enforceability of the DJRI Note Security Agreement—i.e., that RFC has a security interest over "all of the Debtor's assets."  Because the District Court instructed this Bankruptcy Court to grant RFC relief from stay in Roger's and BLP's bankruptcy, RFC may also seek relief from stay against DJRI and the State Court will presumably also enter judgment on these issues. To try to overturn or argue against this determination will be difficult, if not impossible.

-25-

- ***The probability of success of appeals***:  Given the history of litigation, the parties foresee having to litigate and prevail on all these issues on appeal.

- ***The expense and delay to litigate***:  The expense of doing so will be excessive and likely lead to the estate becoming administratively insolvent estate.  As the docket in the State Court Action and this bankruptcy case demonstrate, the issues involving RFC's claim are complicated and will require expensive and drawn-out litigation for years to come.  To continue to litigate with RFC in multiple proceedings/appeals will cost the estate hundreds of thousands of dollars—all for a questionable result and for no discernable benefit to creditors.  Further, this Bankruptcy Court has already denied the DJRI Trustee of a surcharge of RFC's collateral.  So, the estate will likely never obtain a surcharge of RFC's collateral that is anywhere close to $125,000.

**Vacate Dismissal Appeal:**

- The DJRI Trustee's likelihood of success in the Vacate Dismissal Appeal is uncertain.  RFC has been successful in multiple appeals thus far, having already overturned three out of four orders.  In the Ninth Circuit, RFC has already filed two motions to dismiss and has already prevailed on both—causing the summary dismissal of two Ninth Circuit appeals by Roger of the District Court's reversal of two of this Bankruptcy Court's orders.  These results give the DJRI Trustee some hesitation and concern regarding the likelihood that the DJRI Trustee will prevail in the DJRI Vacate Dismissal Appeal.  The DJRI Trustee does not believe that taking the risk of continuing litigation on this appeal is in the best interest of this bankruptcy estate.

**2.    Factor (b):  The difficulties, if any, to be encountered in the matter of collection.**

This factor is either neutral and/or favors approving the Settlement Contract.  The DJRI Trustee is not trying to "collect" from RFC, so this factor is irrelevant.  Specifically, RFC is a creditor, not a defendant in an adversary proceeding.  So, the question of "collectability" against RFC has little, if any, effect on the DJRI Trustee's decision to settle with RFC.

-26-

**3.    Factor (d):  The paramount interest of the creditors and a proper deference to their reasonable views in the premises**.

Approving the Settlement Contract will be in the best interest of creditors:

•    First, if the DJRI Trustee continues to litigate and does not settle with RFC, doing so will likely lead to the estate becoming administratively insolvent and the possibility that the Ninth Circuit dismisses this bankruptcy altogether.

•    Second, all assets in the estate, other than avoidance actions, are encumbered.  So, the only means by which the DJRI Trustee can recover funds from which to pay administrative expenses and unsecured creditors is through prevailing on avoidance actions.  However, the DJRI Trustee does not have sufficient assets to fund those avoidance actions, especially because doing so would require the DJRI Trustee to take the risk and incur even more administrative expenses for an uncertain result.

•    Third, under the settlement, RFC will agree, at the expense of RFC's own collateral, to a carve-out and a priority distribution from the liquidating trust that total $125,000, from which the DJRI Trustee can pay allowed administrative and unsecured claims.

•    Fourth, by the settlement, RFC has also agreed to take the responsibility, risk, and expense of litigating all avoidance actions, the proceeds of which RFC will split seventy-five/twenty-five percent with the estate, such that there is a possibility that unsecured creditors may receive distributions in the future—i.e., the estate will suffer none of the risk or expense, but receive a benefit.

•    Fifth, by the settlement, RFC has agreed to dismiss the Vacate Dismissal Appeal, guaranteeing that this bankruptcy will not be dismissed.

•    Sixth, settlement will avoid the uncertainty, costs, and delays of continued litigation between RFC and the DJRI Trustee on RFC's claim, the validity, scope, and extent of RFC's security interest, etc., and eliminate the DJRI Trustee's need to incur even more administrative expenses to litigate the State Court Action and/or the Vacate Dismissal Appeal.

• Seventh, settlement will aid in the efficient administration of the bankruptcy estate because the settlement resolves the liquidation of all known assets—i.e., there are no known assets left for the DJRI Trustee to administer other than to distribute cash on allowed administrative and unsecured claims.

• Finally, settlement with RFC does not prejudice the Roger Defendants or CMM/BSC. Their rights to litigate with RFC are preserved.

Approving this settlement, therefore, is in the paramount interests of creditors.

**E.    This Court Already Found That Such Evidence Meets The A&C Factors.**

The DJRI Trustee/RFC offer the exact same evidence as the evidence that the Roger Trustee/RFC offered for this Court to approve a substantially similar settlement in the Roger Bankruptcy.  Based on the exact same evidence here, this Bankruptcy Court held that such evidence meets the A&C Factors:

a.    The Probability of Success in the Underlying Litigation.

As this Bankruptcy Court found in the Roger Bankruptcy:

> The record is sufficient to support the conclusion that the Trustee's likelihood of success in litigating the value of RFC's claim was uncertain at best.  There has already been extensive litigation before this Court; over four years of litigation before the State Court; as well as several appeals to the District Court and Ninth Circuit . . . Additionally, as has been noted throughout the record of this case, the litigation over the reasonableness of fees in the State Court action is likely to involve a highly contested process, requiring the Trustee to evaluate four years' worth of billings and approximately 40,000 pages of billing records, on behalf of the estate, in a forum where RFC, the Debtor and related parties are at a substantial advantage over the Trustee, given their involvement and consequent familiarity with the record of that action.

Moving RJN, Ex. 9 at 346.  Based on these findings, this Bankruptcy Court concluded that this factor favored approving the settlement in the Roger Bankruptcy.   The same evidence exists for the Bankruptcy Court to conclude that this factor favors approving the RFC Settlement here.  Like the evidence in the Roger Bankruptcy, the DJRI Trustee/RFC offered evidence of the extensive litigation in the State Court, this Bankruptcy Court, the District Court, and the Ninth Circuit. Further, the DJRI Trustee/RFC offered evidence of the uncertainty, extensiveness, and cost of further litigation between the DJRI Trustee and RFC.  As this Bankruptcy Court already found,

such evidence is sufficient to conclude that this A&C factor favors approving the RFC Settlement.

            **b.**      <u>Difficulty of Collection</u>.

In the Roger Bankruptcy, this Bankruptcy Court concluded that, because RFC is a creditor, "this factor is neutral." Moving RJN, Ex. 9 at 347. As this Bankruptcy Court held: "As such, success in reducing the amount of RFC's fees or the validity of its lien would likely result only in reduction of its claim and/or the extent of its lien on the Debtor's assets, not actual collection of funds." <u>Id</u>. The exact same circumstance exists here. Because RFC is a creditor in the DJRI Bankruptcy as well, "this factor is neutral."

            **c.**      <u>Complexity, Cost, Inconvenience, and Delay of Litigation</u>.

In the Roger Bankruptcy, this Court concluded that this factor favors settlement:

> As noted by the Trustee, and as demonstrated by the length and volume of the record in this case, of the docket in the State Court Action, and in the various appeals related to this bankruptcy proceeding, the costs and delays associated with continued litigation have left the Trustee little choice but to reach a settlement of the issues being settled through the Settlement Contract. In particular, the Trustee has pointed to the potential that if she is unsuccessful in litigating against RFC, there are likely to be few, if any unencumbered assets to pay administrative and general unsecured claims. . . In sum, the record supports the conclusion that the State Court suit and litigation over RFC's security interest would have been overly expensive and time-consuming for the Trustee to prosecute and that the carve-out provided by the Settlement Contract has the greatest potential to permit the Trustee to liquidate assets for the benefit of the Estate.

Moving RJN, Ex. 9 at 347. The DJRI Trustee/RFC offer the same evidence here. Litigation in this bankruptcy has been extensive, including the pending DJRI Vacate Dismissal Appeal, which, without the RFC Settlement, the DJRI Trustee must defend. The "costs and delays associated with continued litigation have left the [DJRI Trustee] little choice but to reach a settlement of the issues [with RFC.]" Given that there are "[limited] . . . assets to pay administrative and general unsecured claims," the "record supports the conclusion that the State Court suit and litigation over RFC's security interest would have been overly expensive and time-consuming for the Trustee to prosecute and that the carve-out provided by the Settlement Contract has the greatest potential to permit the Trustee to liquidate assets for the benefit of the Estate."

d.    Interests of Creditors.

As this Court found in evaluating this factor in the Roger Bankruptcy:

As noted by the Trustee, the Liquidating Trust is potentially the primary (and only) source of recovery for unsecured creditors in this case.  In contrast, as discussed, denial of the Trustee's efforts to settle the RFC claims has the potential of leaving the Estate with few, if any, unencumbered assets with which to pay administrative and general unsecured claims; as well as substantial risk that the Estate will continue to incur substantial fees to litigate the RFC claims.

Moving RJN, Ex. 9 at 347–48.  Similarly here, all assets in the DJRI Bankruptcy are encumbered except the avoidance actions.  The DJRI Trustee has limited unencumbered funds from which to prosecute those avoidance actions.  No settlement with RFC will require the DJRI Trustee to continue to incur substantial fees to litigate the RFC claims as well as the avoidance actions—all with no certain benefit.  Settling with RFC will halt further litigation with RFC, will halt the need for the DJRI Trustee to incur more administrative expenses to prosecute claims, and will give the estate over $125,000 plus the potential for future returns.  So, the last A&C factor also favors approving the settlement.

## V.    CONCLUSION

The DJRI Trustee has encountered numerous difficulties in administering this bankruptcy estate due to the various disputes with RFC and the extent of its security interest in bankruptcy-estate property.  As such, the DJRI Trustee has determined that the best possible outcome for creditors involves: resolving all disputes with RFC; minimizing the remaining litigation that the Bankruptcy Court must adjudicate; ensuring that the bankruptcy estate receives an additional $125,000 in unencumbered funds; and providing the possibility of recovering additional funds from the twenty-five percent of net proceeds from litigation claims.  Because the settlement is fair and equitable and meets all of the A&C Factors, this Bankruptcy Court should grant this Motion.

Dated: 2018-01-24                      Respectfully submitted,

MARSHACK HAYS LLP

By: /s/ Chad V. Haes
    Chad V. Haes
Attorneys for Chapter 7 Trustee
A. CISNEROS

-30-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRALEY & ASSOCIATES
Attorneys at Law


By:  /s/ Franklin R. Fraley, Jr.
     Franklin R. Fraley, Jr.
Attorneys for Secured Creditor
REVERE FINANCIAL CORPORATION

JOINT MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND RFC