# APPENDIX A

**SETTLEMENT CONTRACT**

**between**

**ARTURO CISNEROS,**

**AS CHAPTER 7 TRUSTEE FOR**

**THE BANKRUPTCY ESTATE OF DEBTOR DOUGLAS J. ROGER, M.D., INC., APC,**

**and**

**REVERE FINANCIAL CORPORATION**

**Dated:  2018-01-24**

## 1.0    REFERENCE DATE

This Settlement Contract is dated 24 January 2018 for reference purposes.

## 2.0    PARTIES

The following Persons enter into this Settlement Contract and constitute a/the "Party/ies":

### 2.1    DJRI Trustee

"DJRI Trustee" means, Arturo Cisneros, solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Douglas J. Roger, M.D., Inc., APC, a California professional corporation, in the DJRI Bankruptcy or any duly-appointed successor trustee in the DJRI Bankruptcy.

### 2.2    RFC

"RFC" means Revere Financial Corporation, a corporation organized and existing under the laws of the State of California with its place of business in Los Angeles County, California.

## 3.0    NON-PARTIES

The Parties refer to the following Persons in this Settlement Contract, but the following Persons, and their predecessors/successors, are neither parties to, nor intended or implied beneficiaries of, this Settlement Contract and, therefore, constitute a/the "Non-Party/ies":

### 3.1    BLP

"BLP" means Baleine, L.P., a limited liability partnership organized and existing under the laws of the State of Arizona.

### 3.2    BLP Estate

"BLP Estate" means any bankruptcy estate created pursuant to section 541 of the Bankruptcy Code by virtue of BLP's filing any bankruptcy.

### 3.3    BSC

"BSC" means Bank of Southern California, N.A., a bank organized and existing under the laws of the United States of America.

### 3.4    DJRI-DBP

"DJRI-DBP" means the Douglas J. Roger, M.D., Inc., Defined Benefit Plan, a business entity of unknown form.

### 3.5    Ebarb

"Ebarb" means Nicole Ebarb, an individual.

### 3.6    Freedman

"Freedman" means Eric Freedman, an individual.

### 3.7    LOC

"LOC" means Liberty Orthopedic Corporation, a business entity of unknown form.

### 3.8    OIC

"OIC" means OIC Medical Corporation, a business entity of unknown form.

### 3.9    Roger

"Roger" means Douglas J. Roger, an individual.

### 3.10    Roger Estate

"Roger Estate" means the bankruptcy estate created pursuant to section 541 of the Bankruptcy Code by virtue of Roger's filing any bankruptcy.Douglas J. Roger, an individual.

### 3.11    UOC

"UOC" means Universal Orthopaedic Group, a business entity of unknown form.

## 4.0    DEFINITIONS

In addition to the names of the Parties and Non-Parties defined in sections 2.0 and 3.0, the following terms, whether singular or plural, when printed in this Settlement Contract with initial capital letters, shall have the following definitions.  Terms printed this Settlement Contract with initial capital letters, but for which no definition appears in this section, shall have the meanings defined in the Liquidating Trust.

## 4.1    Adequate Protection Liens

"Adequate Protection Liens" means the liens that the DJRI Trustee grants to RFC pursuant to section 6.4.2.

## 4.2    Allowed Administrative Claim

"Allowed Administrative Claim" means any right to payment constituting a cost or expense of administration of the DJRI Bankruptcy of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the DJRI Estate, any actual and necessary costs and expenses of operating any businesses of the DJRI Estate, any indebtedness or obligations incurred or assumed by the DJRI Estate in connection with the conduct of any business, including, without limitation, the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code, any fees or charges assessed against the DJRI Estate under section 1930 of chapter 123 of title 28 of the United States Code, and which the Bankruptcy Court allows by Final Order.

## 4.3    Allowed Non-Administrative Claim

"Allowed Non-Administrative Claim" means any Claim that is not an Allowed Administrative Claim and that either:

- •    the Bankruptcy Court allows by Final Order; or

- •    section 502(a) of the Bankruptcy Code deems allowed.

## 4.4    Appellate Court

"Appellate Court" means the United States Court of Appeals for the Ninth Circuit.

## 4.5    Approval Date

"Approval Date" means the date that is fifteen days after the Settlement Order is entered unless a Party gives notice under section 6.2.3.

## 4.6    Assets

"Assets" means all property and all Proceeds of all property of any kind, whether real or personal, tangible or intangible, wherever located, including, but not limited to, accounts receivable, books, cash, claims, including, but not limited to, claims arising under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, choses-in-action, contracts, deposit accounts, deposits, equipment, general intangibles, goodwill, goods, intellectual property, interests in real property, investment property as defined in article 9 of the California Commercial Code as amended from time to time, leasehold interests, licenses, machinery, recorded information, records, tax attributes, trademarks, trade names, vehicles, etc., that became or become part of the DJRI Estate any time on or after the DJRI Petition Date, including, but not limited to:

- all Claims;

- all tax attributes of DJRI;

- the DJRI Estate/DJRI-DBP Claim and all DJRI Estate/DJRI-DBP Claim Sale Proceeds;

- the DJRI Estate/OIC Claim and all DJRI Estate/OIC Claim Sale Proceeds;

- the DJRI Estate/Trustee-Professionals Claims;

- all RFC Claims;

- all Receiver Claims;

- all distributions from the Liquidating Trust to the DJRI Trustee;

- all Proceeds from the DJRI Trustee's liquidation of any Liquidating Trust Asset that the Liquidating Trustee transfers back to the DJRI Estate pursuant to the Liquidating Trust Agreement and that the DJRI Trustee chooses not to abandon; and

- all DJRI Estate Cash Collateral, including the Carve-Out.

## 4.7    Bankruptcy Code

"Bankruptcy Code" means title 11 of the United States Code as amended from time to time.

### 4.8 Bankruptcy Court

"Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California solely in the capacity of presiding over the DJRI Bankruptcy Case.

### 4.9 Bar Date

"Bar Date" means 20 July 2015, which the Bankruptcy Court set as the last day for creditors of the DJRI Estate to file proofs of claims against the DJRI Estate with the Bankruptcy Court.

### 4.10 BLP Loan

"BLP Loan" means the:

- "Promissory Note" by BLP to 1st Centennial Bank, dated 7 December 2007;

- "Commercial Guaranty" by Roger to 1st Centennial Bank, dated 7 December 2007; and

- "Commercial Guaranty" by DJRI to 1st Centennial Bank, dated 7 December 2007.

### 4.11 Carve-Out

"Carve-Out" means $45,000.00 in Proceeds from the DJRI Estate Cash Collateral.

### 4.12 Claim

"Claim" means any claim as defined in sections 101(5)(A) and (B) of the Bankruptcy Code, which includes: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

### 4.13 District Court

"District Court" means the United States District Court for the Central District of California.

### 4.14   DJRI Appeal Dismissal

"DJRI Appeal Dismissal" means a stipulation by the Parties to dismiss the DJRI Appeal with a waiver of all attorneys' fees, expenses, and costs pursuant to this Settlement Contract and Federal Rule of Appellate Procedure that the Parties jointly approve.

### 4.15   DJRI Bankruptcy

"DJRI Bankruptcy" means the case entitled *In re Douglas J. Roger, M.D., Inc., APC*, Case No. 6:13-bk-27344-MH (U.S.B.C., C.D. Cal., filed 2013-10-20).

### 4.16   DJRI Estate

"DJRI Estate" means any bankruptcy estate created pursuant to section 541 of the Bankruptcy Code by virtue of DJRI's filing the DJRI Bankruptcy.

### 4.17   DJRI Estate Cash Collateral

"DJRI Estate Cash Collateral" means $183,480.95 cash on hand that the DJRI Trustee has collected and holds for the DJRI Estate in which RFC claims a security interest that the DJRI Trustee disputes at least in part.

### 4.18   DJRI Estate/DJRI-DBP Claim

"DJRI Estate/DJRI-DBP Claim" means the claims that the DJRI Trustee alleged in the DJRI Trustee's complaint in the adversary proceeding entitled Cisneros v. Douglas J. Roger, M.D., Inc., Defined Benefit Plan, Adv. Proc. No. 6:15-ap-01309-MH (U.S.B.C. C.D. Cal., Riverside Div., filed 2015-10-20).

### 4.19   DJRI Estate/DJRI-DBP Claim Sale Proceeds

"DJRI Estate/DJRI-DBP Claim Sale Proceeds" means $105,000.00 that the DJRI Trustee received and holds pursuant to the auction of the DJRI Trustee/DJRI-DBP Claim on 2 August 2017 pending the Bankruptcy Court's entry of a Final Order confirming that auction.

### 4.20   DJRI Estate/Freedman Settlement

"DJRI Estate/Freedman Settlement" means the Settlement Agreement and Limited Release between the DJRI Trustee and Freedman dated 30 March 2016 that is subject to a pending motion to the Bankruptcy Court to approve.

### 4.21   DJRI Estate/Freedman Settlement Proceeds

"DJRI Estate/Freedman Settlement Proceeds" means $14,000.00 that the DJRI Trustee received and holds pursuant to the DJRI Trustee/Freedman Settlement pending the Bankruptcy Court's entry of a final order approving that settlement.

### 4.22   DJRI Estate/OIC Claim

"DJRI Estate/OIC Claim" means the claims that the DJRI Trustee alleged in the DJRI Trustee's complaint in the adversary proceeding entitled <u>Cisneros v. OIC Med. Corp.</u>, Adv. Proc. No. 6:15-ap-01307-MH (U.S.B.C. C.D. Cal., Riverside Div., filed 2015-10-20).

### 4.23   DJRI Estate/OIC Claim Sale Proceeds

"DJRI Estate/OIC Claim Sale Proceeds" means $80,000.00 that the DJRI Trustee received and holds pursuant to the auction of the DJRI Trustee/OIC Claim on 2 August 2017 pending the Bankruptcy Court's entry of a Final Order confirming that auction.

### 4.24   DJRI Estate/Trustee-Professionals Claims

"DJRI Estate/Trustee-Professionals Claims" means all Claims of the DJRI Estate against the DJRI Trustee and professionals that the DJRI Trustee has retained or retains in the future which the DJRI Estate now owns or owns in the future.

### 4.25   DJRI Petition Date

"DJRI Petition Date" means 20 October 2013.

### 4.26   DJRI Trustee Releasees

"DJRI Trustee Releasees" means the DJRI Trustee and each of the DJRI Trustee's agents, brokers, employees, representatives, servants, attorneys, accountants, and insurers, and the predecessors, successors, assignors, assignees, dependents, ancestors, descendants, heirs, attorneys-in-fact, conservators, administrators, executors, trustees, receivers, and other fiduciaries, past, present, and future, of all of them, in such capacities for the DJRI Trustee, but no such person shall constitute a DJRI Trustee Releasee to the extent that such person acts/acted in any capacity whatsoever for any Non-Party or is liable on/for any Claim, the DJRI Estate/DJRI-DBP Claim, the DJRI Estate/OIC Claim, any DJRI Estate/Trustee-Professionals Claims, any Liquidating Trust Asset, any Receiver Claim, or any RFC Claim.

### 4.27   DJRI Trustee Releasors

"DJRI Trustee Releasors" means the DJRI Trustee and any successors of the DJRI Trustee in his/her capacity as trustee.

### 4.28   Ebarb Adversary Proceeding

"Ebarb Adversary Proceeding" means *Ebarb v. Revere Fin. Corp.*, Adv. No. 6:15-ap-01271-MH (U.S.B.C., C.D. Cal., Riverside Div., filed 2014-09-25).

### 4.29   Execution Date

"Execution Date" means the last date any Party signs this Settlement Contract.

### 4.30   Final Order

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter as entered on the docket that has not been reversed, stayed, modified, or amended and as to which the time to appeal, petition for certiorari, or to seek re-argument or any other review, amended findings or conclusions, or rehearing has run or as to which any right to appeal, reargue, petition for certiorari, or to seek rehearing or any other review, amended findings or conclusions has been waived in writing or, if an appeal, petition for certiorari, request for re-argument or any other review thereof, amended findings or conclusions, or rehearing has been pursued or granted, then such an appeal, re-argument, or any other review, request for amended findings or conclusions, petition for certiorari, or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further re-argument or any other review, amended findings or conclusions, or rehearing has expired.

### 4.31   Joint Settlement Motion

"Joint Settlement Motion" means a joint motion and supporting papers  to approve this Settlement Contract that the Parties jointly approve.

### 4.32   Liquidating Trust Agreement

"Liquidating Trust Agreement" means the Liquidating Trust Agreement for the Bankruptcy Estate of Debtor Douglas J. Roger, M.D., Inc., APC, dated 24 January 2018, in the form attached to this Settlement Contract as Exhibit 4.32.

### 4.33   Liquidating Trust Assets

"Liquidating Trust Assets" means all Claims and all causes of action, claims, choses in action, and any rights of recovery whatsoever that the DJRI Estate now owns or owns in the future, including, but not limited to, claims arising under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code that the DJRI Estate now owns or owns in the future against any Person, including, but not limited to, the Non-Parties, and excluding only the:

- tax attributes of DJRI;

- DJRI Trustee/DJRI-DBP Claim;

- DJRI Trustee/OIC Claim;

- DJRI Estate/Trustee-Professionals Claims;

- the Receiver Claims; and

- the RFC Claims.

### 4.34   Liquidating Trust

"Liquidating Trust" means the liquidating trust that the parties to the Liquidating Trust Agreement create pursuant to the Liquidating Trust Agreement to hold, administer, and liquidate the Liquidating Trust Assets on and after the Approval Date.

### 4.35   Liquidating Trustee

"Liquidating Trustee" means a Person that RFC appoints as trustee of the Liquidating Trust or any Person that any Person appoints as successor trustee pursuant to the Liquidating Trust Agreement.

### 4.36   Person

"Person" includes individuals, partnerships, corporations, trusts, and other entities of any kind.

### 4.37   Proceeding

"Proceeding" means any action, adjudication, assignment for the benefit of creditors, audit, bankruptcy, case, deliberation, discovery request, enforcement, inquiry, insolvency, investigation, hearing, proceeding, review, request for relief,

rule-making, subpoena, and the like, whether before the executive, legislative, or judicial branch of any government or an alternative dispute resolution provider, public or private.

### 4.38    Proceeds

"Proceeds" means all money that either the DJRI Trustee or RFC receives in place, by virtue, because, or as a result, of any Asset, including, but not limited to:

- from any disposition of an Asset, including, but not limited to, the sale, lease, license, exchange, etc., of the Asset;

- on account of an Asset, including, but not limited to, payments, interest, dividends, distributions, fees, etc.;

- from any rights arising out of an Asset, including, but not limited to, royalties, commissions, etc.;

- from any claims arising out of the loss of, or damage to, an Asset, including, but not limited to, damages, restitution, etc.;

- from any insurance covering the loss of, or damage to, an Asset, including, but not limited to, payments on claims, claims against the insurer for non-payment, etc.

including, but not limited to, the DJRI Estate Cash Collateral.

### 4.39    Receiver

"Receiver" means Jerry Wang, whom the State Court appointed as receiver of certain assets of BLP, DJRI, and Roger pursuant to the Order Granting Motion by Revere Financial Corporation To:    (1) Partially Renew Motion to Appoint Receiver Pursuant to Security Agreement re Roger Loan; and (2) Appoint Receiver in Aid of Attachment re BLP Loan (Revised Pursuant to Minute Order Entered 12 March 2013) dated 18 March 2013 in the RFC Action.

### 4.40    Receiver Claims

"Receiver Claims" means all causes of action, claims, choses in action, and any rights of recovery whatsoever that the Receiver had the rights to prosecute before, on, or after the DJRI Petition Date except thosethat constitute a Liquidating Trust Asset, the DJRI Estate/DJRI-DBP Claim, the DJRI Estate/OIC Claim, or a DJRI Estate/Trustee-Professionals Claim.

### 4.41   Representation/Warranty

"Representation/Warranty" means the statements that each Party makes in section 6.17.

### 4.42   RFC Action

"RFC Action" means the case entitled *Revere Fin. Corp. v. Roger*, Case No. INC 092 308 (Super. Ct. Cal., Cty. Riverside, Indio Branch, filed 2009-12-29).

### 4.43   RFC Advances

"RFC Advances" means any money that RFC advances to the DJRI Estate pursuant to section 6.5.

### 4.44   RFC Adversary Proceeding

"RFC Adversary Proceeding" means *Revere Fin. Corp. v. Roger*, Adv. No. 6:14-ap-01248-MH (U.S.B.C., C.D. Cal., Riverside Div., filed 2014-09-22).

### 4.45   RFC Appeals

"RFC Appeals" means:

- *In re Baleine*, LP, C.D. App. No. 5:14-cv-02513-SJO (U.S.D.C., C.D. Cal., W. Div., filed 2014-12-03), 9th Cir. App. No. 15-56633 (9th Cir., filed 2015-10-21);

- *In re Roger*, C.D. App. No. 5:14-cv-02515-SJO (U.S.D.C., C.D. Cal., W. Div., filed 2014-12-03), 9th Cir. App. No. 15-56649 (9th Cir., filed 2015-10-21);

- *In re Roger*, C.D. App. No. 5:15-cv-00087-SJO (U.S.D.C., C.D. Cal., W. Div., filed 2015-01-06), 9th Cir. App. No. 15-56928 (9th Cir., filed 2015-12-16);

- *In re Douglas J. Roger, M.D., Inc., APC*, C.D. App. No. 5:15-cv-00127-SJO (U.S.D.C., C.D. Cal., W. Div., filed 2015-01-06), 9th Cir. App. No. 15-56798 (9th Cir., filed 2015-11-20) and

- *Revere Fin. Corp. v. Bank of S. Calif.*, C.D. App. No. 5:17-cv-01933-SJO (U.S.D.C., C.D. Cal., W. Div., filed 2017-09-21)

and all further proceedings on appeal or remand.

### 4.46   RFC Claims

"RFC Claims" means all causes of action, claims, choses in action, and any rights of recovery whatsoever that RFC had the rights to prosecute before, on, or after the DJRI Petition Date, except those that constitute a Liquidating Trust Asset, the DJRI Estate/DJRI-DBP Claim, the DJRI Estate/OIC Claim, or a DJRI Estate/Trustee-Professionals Claim.

### 4.47   RFC-DJRI Estate Claim

"RFC-DJRI Estate Claim" means Claim No. 11 by RFC in the DJRI Bankruptcy, subject to this Settlement Contract.

### 4.48   RFC Releasees

"RFC Releasees" means RFC and each of RFC's parent, subsidiary, and affiliated entities, each of their members, shareholders, partners, joint venturers, directors, officers, managers, agents, brokers, employees, representatives, servants, attorneys, accountants, and insurers, and the predecessors, successors, assignors, assignees, dependents, ancestors, descendants, heirs, attorneys-in-fact, conservators, administrators, executors, trustees, receivers, and other fiduciaries, past, present, and future, of all of them, in such capacities.

### 4.49   RFC Releasors

"RFC Releasors" means RFC and any successors of RFC.

### 4.50   RFC Security Interest

"RFC Security Interest" means the security interest and the liens that RFC claims in certain Assets, including, but not limited to, pursuant to any of the:

- "Commercial Security Agreement" by Douglas J. Roger and Douglas J. Roger, M.D., Inc., APC, in favor of 1st Centennial Bank, dated 21 August 2007;

- Any document that RFC filed or recorded before the Roger Petition Date, including, but not limited to, to give notice of a lien, cause a lien to attach, establish priority of a lien, or perfect a lien, etc., but excluding any notice of pending action or *lis pendens* that RFC filed or recorded before the Roger Petition Date;

- Any judgment or order that any court entered prior to the Roger Petition Date; and/or

- Any lien created by, or arising from, any of that/those agreement, document/s, judgment/s, and/or order/s.

### 4.51    Roger Bankruptcy

"Roger Bankruptcy" means the case entitled *In re Roger*, Case No. 6:13-bk-27611-MH (U.S.B.C., C.D. Cal., filed 2013-10-25).

### 4.52    Roger/DJRI Financing Statements

"Roger/DJRI Financing Statements" means the:

- "UCC Financing Statement" by 1st Centennial Bank against Roger and DJRI, filed 24 August 2007; and

- "UCC Financing Statement" by RFC against Roger and DJRI, filed 14 November 2012.

### 4.53    Roger Loan

"Roger Loan" means the:

- "Promissory Note" by Roger to 1st Centennial Bank, dated 21 August 2007;

- "Commercial Guaranty" by DJRI to 1st Centennial Bank, dated 21 August 2007;

- "Commercial Security Agreement" by Roger and DJRI to 1st Centennial Bank, dated 21 August 2007;

- "Change in Terms Agreement" between Roger and 1st Centennial Bank, dated 22 September 2008; and

- Roger/DJRI Financing Statements.

### 4.54    Settlement Contract

"Settlement Contract" means this Settlement Contract between Arturo Cisneros, as Chapter 7 Trustee for the Bankruptcy Estate of Douglas J. Roger, M.D., Inc., APC, and Revere Financial Corporation, dated 24 January 2018 for reference purposes.

### 4.55    Settlement Order

"Settlement Order" means an order approving this Settlement Contract that the Parties jointly approve and lodge with the Bankruptcy Court with the Joint Settlement Motion.

### 4.56    State Court

"State Court" means the Superior Court of the State of California, County of Riverside.

## 5.0    RECITALS

The Parties enter into this Settlement Contract based on the following facts:

**5.1**    RFC filed the RFC Action seeking to collect damages on causes of action arising out of the Roger Loan and the BLP Loan, on which RFC contends that DJRI and others are liable to RFC.

**5.2**    DJRI filed the DJRI Bankruptcy, which automatically stayed the RFC Action as against DJRI.

**5.3**    RFC filed the RFC-DJRI Estate Claim in the DJRI Bankruptcy.

**5.4**    The Parties enter into this Settlement Contract to settle all Claims, whether alleged in any Proceeding or not, solely as between the DJRI Trustee on behalf of the DJRI Estate, on the one hand, and RFC, on the other hand, and provide a protocol for the DJRI Trustee to distribute the money of the DJRI Estate without further litigation between/among the DJRI Trustee, RFC, and/or the Receiver.   The Parties intend this Settlement Contract to bind the DJRI Trustee and RFC on all matters as between the DJRI Trustee and RFC in all Proceedings.

**5.5**    The Parties do not intend this Settlement Contract to bind, or constitute evidence for or against, BLP, DJRI, Ebarb, the Receiver, RFC, Roger, and any secured creditor of the DJRI Estate in any Proceeding, including, but not limited to, the Ebarb Adversary Proceeding, the RFC Action, and the RFC Adversary Proceeding, but only for distribution purposes in the DJRI Bankruptcy.

## 6.0  AGREEMENT

The Parties agree as follows:

### 6.1  Binding Effect

#### 6.1.1  Effect of the Execution Date

On and after the Execution Date, the Parties shall act in good faith to obtain the Settlement Order as a Final Order and implement the Liquidating Trust.

#### 6.1.2  Effect of the Approval Date

On and after the Approval Date, this Settlement Contract will will be effective and binding.

#### 6.1.3  Effect if Approval Date Does Not Occur

If the Approval Date does not occur, nothing in this Settlement Contract shall bind either Party or constitute an admission by either Party.

### 6.2  Joint Settlement Motion

#### 6.2.1  Filing Deadline

The Parties shall file the Joint Settlement Motion with the Bankruptcy Court within five days after the Effective Date.

#### 6.2.2  Reply Papers

Either Party may file any reply papers for the Joint Settlement Motion with the Bankruptcy Court.

#### 6.2.3  Order Content

If the Bankruptcy Court enters the Settlement Order with any change whatsoever, either Party may, in such Party's sole and absolute discretion, declare this Settlement Contract void from the outset by giving written notice to the other Party within fifteen days after the entry of the Settlement Order.

18-01-24—FRF-v17-Signature

### 6.2.4  Order Deadline

If the Bankruptcy Court does not enter the Settlement Order on or before 21 February 2018, the Parties jointly may declare this Settlement Contract void from the outset.

## 6.3    Settlements

### 6.3.1  Freedman Settlement

The DJRI Trustee shall cancel the Freedman Settlement by notifying Freedman that the DJRI Trustee cancels the Freedman Settlement pursuant to the Approval Order on or before the Approval Date.

### 6.3.2  Other Settlements

The DJRI Trustee shall not propose, negotiate, or enter into any agreement relating to, including not any assignment, compromise, sale, settlement, or transfer of, any causes of action, claims, choses in action, and any rights of recovery whatsoever that:

- any Person asserts against the DJRI Estate;

- the DJRI Estate owned, now owns, or owns in the future except the DJRI Estate/DJRI-DBP Claim and the DJRI Estate/OIC Claim if the Bankruptcy Court enters a Final Order approving the DJRI Trustee's sales at auction of the DJRI Estate/DJRI-DBP Claim and the DJRI Estate/OIC Claim; or

- is a Liquidating Trust Asset,

without RFC's prior written consent.

## 6.4    RFC Security Interest and Adequate Protection Liens

### 6.4.1  Secured Debt and Security Interest

The DJRI Trustee does not dispute that:

- DJRI owes secured debts to RFC on the BLP Loan and the Roger Loan;

- the RFC Security Interest, on and after the DJRI Petition Date, constitutes a lien against all Assets except Claims and

Proceeds of Claims that the DJRI Trustee owns under sections 544 through 553, inclusive, of the Bankruptcy Code, including, but not limited to the following claims which are not subject to the RFC Security Interest:

- o   DJRI Estate/DJRI-DBP Claim;

- o   DJRI Estate/OIC Claim;

- o   DJRI Estate/Trustee-Professionals Claims;

- o   Receiver Claims; and

- o   RFC Claims.

- the RFC Security Interest, on and after the DJRI Petition Date, is legal, is valid, has attached, is perfected, has first priority over all other liens against, or security interests in, all Assets except Claims and Proceeds of Claims that the DJRI Trustee owns solely under sections 544 through 553, inclusive, of the Bankruptcy Code including, but not limited to:

- o   DJRI Estate/DJRI-DBP Claim;

- o   DJRI Estate/OIC Claim;

- o   DJRI Estate/Trustee-Professionals Claims;

- o   Receiver Claims; and

- o   RFC Claims.

- the RFC Security Interest is enforceable and binds the DJRI Estate.

### 6.4.2  Adequate Protection

To protect RFC regarding the DJRI Trustee's use of those Assets subject to the RFC Security Interest, the DJRI Trustee grants the Adequate Protection Liens to RFC, which constitute liens against all Assets and any RFC Advances.  Such Adequate Protection Liens are legal, are valid, have attached, are perfected, have first priority over all other liens against, and security interests in, all Assets and the RFC Advances, and are

enforceable additional and replacement liens that bind the DJRI Trustee and the DJRI Estate with the same effect as the RFC Security Interest.

### 6.4.3   Attachment

The DJRI Trustee:

- • does not dispute that the RFC Security Interest and the Adequate Protection Liens have attached under all applicable federal, state, or other laws on the Approval Date; and

- • shall not require any further act, consent, filing, notice, order, possession, or waiver by any Person to effect attachment.

### 6.4.4   Perfection

The DJRI Trustee:

- • does not dispute that the RFC Security Interest and the Adequate Protection Liens are deemed to be perfected and recorded under all applicable federal, state, or other laws as of the Approval Date; and

- • shall not require any further act, consent, filing, notice, order, possession, or waiver by any Person to effect perfection.

### 6.4.5   Priority

The DJRI Trustee does not dispute that, to the extent RFC seeks to file or record any document, including, but not limited to, any consents, financing statements, mortgages, notices of liens and security interests, trust deeds, or waivers to give full effect to the RFC Security Interest or the Adequate Protection Liens, any such filing, recording, or waiver shall relate in priority back to the date of the filing of the Roger/DJRI Financing Statements.

### 6.4.6   Waiver

The DJRI Trustee, on his own behalf, on behalf of any Persons whom he employs, and on behalf of the DJRI Estate, irrevocably waives all powers and rights to, and shall not:

- grant or impose under section 364 of the Bankruptcy Code or otherwise, any liens against, or security interests in, any of the Assets that are *pari passu* with, or senior to, the RFC Security Interest or the Adequate Protection Liens; or

- seek a surcharge against any of the Assets under section 506(c) of the Bankruptcy Code or otherwise, or to modify or affect any right of RFC.

### 6.4.7  Continuing Effect

The RFC Security Interest and Adequate Protection Liens shall continue in all Assets and all Proceeds and any RFC Advances until the DJRI Trustee actually pays the money that comprises the Assets, Proceeds, and RFC Advances to the permitted recipients pursuant to section 6.7.

## 6.5  Carve-Out

### 6.5.1  Grant

RFC grants the Carve-Out to the DJRI Trustee.

### 6.5.2  Guarantee

RFC guarantees that the DJRI Trustee will be able to use the Carve-Out and the DJRI Estate Priority Distribution (as defined in the Liquidating Trust Agreement) pursuant to 6.7.1 despite any other Persons' claims of security interests in that money, by either or both:

- first, defending and defeating all such claims in the name of the DJRI Trustee; and/or

- second, making RFC Advances.

### 6.5.3  RFC Advances

Any RFC Advances will be deemed made pursuant to 11 U.S.C. § 364(c)(3) and subject only to valid and unavoidable liens or security interests against the DJRI Estate.

### 6.6   Asset Liquidation

#### 6.6.1  Liquidating Trust Assets

On the Approval Date, the DJRI Trustee shall transfer for prosecution and/or settlement and shall be deemed, without further action, to have transferred for prosecution and/or settlement the Liquidating Trust Assets, regardless of when created, to the Liquidating Trust to be held, administered, and liquidated by the Liquidating Trustee for the benefit of the creditors of the DJRI Estate pursuant to the Liquidating Trust Agreement.

#### 6.6.2  Distributions from Liquidating Trust

Any distributions received by the DJRI Estate from the Liquidating Trust shall be free and clear of any liens, claims, or interests of RFC and of any other alleged secured claims as required by section 6.5; provided, however, that the RFC Security Interest and/or the Adequate Protection Liens shall continue in such distributions until the DJRI Trustee actually uses such distributions to pay any Allowed Administrative Claims or Allowed Non-Administrative Claims to the Person(s) who hold the claims.

### 6.7   Asset Distributions

#### 6.7.1  Allowed Administrative Claims and Allowed Non-Administrative Claims

The DJRI Trustee shall use:

- all Proceeds of the tax attributes of DJRI;

- all DJRI Estate/DJRI-DBP Claim Sale Proceeds;

- all DJRI Estate/OIC Claim Sale Proceeds;

- all of the Carve-Out;

- all distributions from the Liquidating Trust to the DJRI Trustee; and

- all Proceeds from the DJRI Trustee's liquidation of any Liquidating Trust Asset that the Liquidating Trustee transfers back to the DJRI Estate pursuant to the

Liquidating Trust Agreement and that the DJRI Trustee chooses not to abandon,

to pay Allowed Administrative Claims and Allowed Non-Administrative Claims in accord with section 726 of the Bankruptcy Code.

### 6.7.2  Allowed Secured Claims

Except as provided in section 6.7.1, the DJRI Trustee shall distribute all money that the DJRI Trustee receives from all Proceeds of all Assets, including, but not limited to, the DJRI Estate Cash Collateral, to:

- RFC without any reduction of any sort not later than 14 days after the DJRI Trustee or any Person acting at the DJRI Trustee's direction has possession, custody, or control of the Proceeds and/or 14 days after the Approval Date, whichever is later;

- unless another Person claims a security interest in the Proceeds, in which case the DJRI Trustee shall distribute Proceeds pursuant to a Final Order of the Bankruptcy Court.

## 6.8    Asset Abandonment

### 6.8.1  Unliquidated Assets

The DJRI Trustee shall be deemed to have automatically abandoned all unliquidated Assets, including the Receiver Claims and the RFC Claims, and specifically excluding only the tax attributes of DJRI, the DJRI Estate/DJRI-DBP Claim, the DJRI Estate/OIC Claim, the DJRI Estate/Trustee-Professionals Claims, and the Liquidating Trust Assets,, effective immediately on the Approval Date, to the extent that the DJRI Trustee has not previously done so, without further action by any Person or entry of any order by the Bankruptcy Court other than the Settlement Order.

### 6.8.2  Liquidating Trust Assets

The DJRI Trustee shall abandon any Liquidating Trust Asset that the Liquidating Trustee, in the Liquidating Trustee's sole and absolute discretion, transfers back to the DJRI Trustee pursuant to the Liquidating Trust Agreement and that RFC, in RFC's sole and absolute discretion, designates in writing for the DJRI Trustee to abandon unless the DJRI Trustee chooses to actively prosecute that Liquidating Trust Asset for the DJRI Estate.

### 6.8.3  Orders

RFC may submit any orders to the Bankruptcy Court to enter:

- as additional evidence of the DJRI Trustee's deemed abandonment of any unliquidated Asset pursuant to section 6.8.1; and

- to effect the DJRI Trustee's abandonment of any Claim upon RFC's election pursuant to section 6.8.2,

both in RFC's sole and absolute discretion, and the DJRI Trustee will not object to, or otherwise interfere with RFC's efforts to obtain, such orders as long as such orders are consistent with this Settlement Contract and applicable bankruptcy law.

### 6.8.4  Waiver

If the DJRI Trustee is deemed to have abandoned, or abandons, any Asset, whether pursuant to this Settlement Contract or the Bankruptcy Code, the DJRI Estate shall be deemed to have waived and released any claim, interest, right, or title in or to the abandoned Asset solely for the DJRI Estate.

## 6.9  **RFC-DJRI Estate Claim**

### 6.9.1  Allowance

The DJRI Trustee consents to the allowance of the RFC-DJRI Estate Claim in the total combined secured and unsecured amount of $5,500,000.00, which shall be allowed only as follows:

- a secured claim in accord with section 506 of the Bankruptcy Code that is entitled to adequate protection as this Settlement Contract provides in the amount of $4,000,000.00; and

- a general unsecured claim under section 502 of the Bankruptcy Code in the amount of $1,500,000.00.

### 6.9.2  Credit

RFC shall credit against the $4,000,000.00 total secured portion of the RFC-DJRI Estate Claim:

- $286,354.00, which the Receiver collected on behalf of DJRI;

- any payments on the Roger Loan and/or the BLP Loan that RFC receives from any source, including, but not limited to, BLP, the BLP Estate, DJRI, the DJRI Estate, and/or the Liquidating Trust.

### 6.9.3  Objection

The DJRI Trustee shall not take any action against any Claim by RFC against the DJRI Estate, whether by objection or otherwise.

### 6.9.4  Receiver

#### 6.9.4.1    Assignment

RFC confirms that the Receiver has assigned all Claims that the Receiver may have against the DJRI Estate to RFC.

#### 6.9.4.2    Incorporation

The RFC-DJRI Estate Claim includes all Claims that the Receiver may have against the DJRI Estate.

#### 6.9.4.3    Indemnity

RFC shall indemnify the DJRI Estate and the DJRI Releasees for any Claim that the Receiver asserts against the DJRI Estate and the DJRI Releasees.

#### 6.9.4.4    Proof of Claim

RFC and/or the Receiver may file an amended proof of claim against the DJRI Estate to state the full amount of the Receiver's Claim against the DJRI Estate, but which shall remain subject to the allowed amounts in section 6.9.1.

#### 6.9.4.5    Objection

The DJRI Trustee shall not take any action against any Claim by the Receiver against the DJRI Estate, whether by objection or otherwise.

### 6.9.5  RFC—BLP, Ebarb, and Roger

The DJRI Trustee will take no position at any time on the validity or amount of RFC's Claims against BLP, Ebarb, or Roger in action, case, or proceeding.

### 6.9.6  RFC Claim Objections

RFC may object to any Claim and any administrative expense that any Person seeks to recover from the DJRI Estate, and the DJRI Trustee will not interfere with any such objection; provided, however, the DJRI Trustee and any professionals that the DJRI Trustee hires may defend any objection that RFC makes to any request that the DJRI Trustee or any professional that the DJRI Trustee hires, respectively, makes for fees and expenses.

## 6.10   <u>RFC Appeals</u>

### 6.10.1 DJRI Trustee Position

The DJRI Trustee will take no further position on any issue arising in, or related to, any of the RFC Appeals before any court except:

- to file a paper with any court that RFC may request stating that the DJRI Trustee and RFC have settled all disputes between the DJRI Trustee no later than ten days after RFC so requests; and

- pursuant to section 6.10.2.

### 6.10.2 RFC Dismissal

RFC and the DJRI Trustee shall sign, deliver, and file with the Appellate Court the DJRI Appeal Dismissal.

### 6.10.3 Appellate Decisions

No decision by any court in connection with any of the RFC Appeals shall affect this Settlement Contract after the Approval Date.

18-01-24—FRF-v17-Signature

### 6.11   Relief from Stay

**6.11.1 All Purposes**

The Receiver and RFC shall have immediate relief from the automatic stay in the DJRI Estate on the Approval Date, to whatever extent the automatic stay then still applies, for all purposes, including, but not limited to, as to DJRI, to:

- liquidate and obtain judgments and/or orders on all Claims that the Receiver and RFC may have against any of BLP, Ebarb, DJRI, and Roger before the State Court, but not to enforce any judgment or order liquidating those Claims against any Asset except any abandoned Asset;

- obtain judgments and/or orders to discharge the Receiver in all respects, including, but not limited to, obtaining approval of the Receiver's accounting, including, but not limited to, determining/approving the amounts of the Receiver's fees/expenses, awarding the Receiver's fees/expenses against any of BLP, Ebarb, DJRI, and Roger, and terminating the office of the Receiver in the RFC Action, before the State Court, but not to enforce any judgment or order on such matters against any Asset except any abandoned Asset.

**6.11.2 Limit**

RFC shall not take any action against the Liquidating Trust or the DJRI Estate that is inconsistent with the express terms of the Settlement Contract or the Liquidating Trust so long as the DJRI Trustee is not in material breach of the Settlement Contract or the Liquidating Trust Agreement.

### 6.12   Expenses of Settlement

The DJRI Trustee, pursuant to section 6.7.1, and RFC, each as a separate Party, shall pay all of her/its own expenses, including, but not limited to, attorneys' fees and expenses, professional fees and expenses, and court costs, arising out of, or related to, this Settlement Contract and the dispute underlying this Settlement Contract without recourse directly against the other; provided, however, nothing in this Settlement Contract or the Liquidating Trust Agreement shall preclude either Party from recovering the Party's expenses, including, but not limited to, attorneys' fees and expenses, professional fees and expenses, and court costs, arising out of, or related to, this Settlement Contract and the

dispute underlying this Settlement Contract from any other person or source, including, but not limited to, as expressly provided in sections 6.7.1 and 6.11 and section 5.3.5 of the Liquidating Trust Agreement, any other contract, or any applicable law.

### 6.13   Taxes

#### 6.13.1 Disclaimer

No Party makes any representation or warranty as to the tax consequences to any Party arising out of, or relating to, the signing and performance of this Settlement Contract and any instruments that any Person signs and/or delivers to give effect to this Settlement Contract.

#### 6.13.2 Determination

The DJRI Trustee shall employ section 505 of the Bankruptcy Code to obtain a prompt determination of taxes for the DJRI Estate.

#### 6.13.3 Tax Attributes

The DJRI Trustee shall act in good faith to preserve all tax attributes favorable to the DJRI Estate and pursue refunds for the benefit of the DJRI Estate.

#### 6.13.4 Payment

The DJRI Estate and RFC shall each pay their own taxes arising out of, or related to, any transaction that is the subject of this Settlement Contract.

#### 6.13.5 Liquidating Trust

The Parties:

- intend that the Liquidating Trust qualify as a liquidating trust within the meaning of section 301.7701-4(d) of the United States Treasury Regulations for federal and applicable state income tax purposes; and

- shall file tax returns reporting items of taxable income and loss in respect of the Liquidating Trust as required by and in a manner that is consistent with the provisions of the Liquidating Trust Agreement.

### 6.14   Cooperation

The DJRI Trustee and RFC, as creditor and as Liquidating Trustee, shall reasonably cooperate with each other, the Liquidating Trust, and other Persons as the DJRI Trustee and RFC, as creditor and as Liquidating Trustee, may request, including, but not limited to, by providing assistance, documents, and information, signing and delivering any and all documents, and performing any and all acts, to liquidate all Assets, prosecute/defend all Claims, collect all Proceeds, and satisfy all allowed Claims; the Person requesting such cooperation shall pay any reasonable expenses of the Person providing the cooperation incurs to do so.  Nothing contained in this Settlement Contract or the Liquidating Trust Agreement, however, shall prevent the DJRI Trustee from filing and seeking approval of a trustee final report reserving the right to re-open the case to administer any additional Assets the DJRI Estate receives pursuant to this  Settlement Contract or the Liquidating Trust Agreement.

### 6.15   Releases

On the Approval Date, the following releases shall take effect:

#### 6.15.1      Release by the DJRI Trustee

The DJRI Trustee, collectively and individually, on behalf of the DJRI Trustee Releasors, collectively and individually, fully releases and discharges the RFC Releasees, collectively and individually, with respect to any and all manner of claims of any kind or nature whatsoever, in law, equity, or otherwise, whether direct or vicarious, whether fixed or contingent, whether now known or unknown, whether suspected or unsuspected, and whether concealed or hidden, which now exist, or which existed before the Approval Date, or which may exist after the Approval Date, for any act, difference, dispute, event, error, occurrence, omission, or transaction prior to the Approval Date arising out of, or related to, the DJRI Bankruptcy or the DJRI Estate.

#### 6.15.2      Release by RFC

RFC, collectively and individually, on behalf of the RFC Releasors, collectively and individually, fully releases and discharges the DJRI Trustee Releasees, collectively and individually, with respect to any and all manner of claims of any kind or nature whatsoever, in law, equity, or otherwise, whether direct or vicarious, whether fixed or contingent, whether now known or unknown, whether suspected or unsuspected, and whether concealed or hidden, which now exist, or which existed before the Approval Date, or which may exist after the Approval Date, for any act, difference, dispute, event, error, occurrence, omission, or

transaction prior to the Approval Date arising out of, or related to, the DJRI Bankruptcy or the DJRI Estate.

### 6.15.3        Effect of Release on Unknown Claims

With respect to the releases in sections 16.15.1 and 16.15.2, the DJRI Trustee Releasors and the RFC Releasors waive and relinquish, to the fullest extent that the law permits, the provisions, rights, and benefits of California Civil Code section 1542 and other statutes or common law principles of similar effect.  The DJRI Trustee Releasors and the RFC Releasors acknowledge that they are familiar with, and/or have been advised by their legal counsel of, the provisions of California Civil Code section 1542, which provides as follows:

> **[General release; extent.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The DJRI Trustee Releasors and the RFC Releasors acknowledge and understand that the releases in sections 6.15.1 and 6.15.2 include all future claims arising out of, or related to, any act, difference, dispute, event, error, occurrence, omission, or transaction with and/or by any of the DJRI Trustee Releasees and the RFC Releasees before the Approval Date, whether currently known, unknown, foreseen, or unforeseen.  The DJRI Trustee Releasors and the RFC Releasors understand and acknowledge the significance and consequence of this specific waiver of California Civil Code section 1542.

### 6.15.4        <u>Limits on Scope of Releases</u>

The releases in sections 6.15.1 through 6.15.2, inclusive, do not include:

- any claim of the DJRI Trustee and/or the DJRI Trustee's professionals against the DJRI Estate for compensation or expenses;

- any claim for any breach of this Settlement Contract; and

- any claim for any breach of the Liquidating Trust Agreement.

### 6.16    Admissions/Preclusion

#### 6.16.1        No Admission

The Parties enter into this Settlement Contract, and entered into the negotiations that led to this Settlement Contract, solely for the purposes stated in this Settlement Contract.  This Settlement Contract and the negotiations that led to this Settlement Contract do not constitute an admission of any liability or responsibility by either Party for any Claim or the truth or validity of the allegations of any Person in any Proceeding.

#### 6.16.2        Preclusion

Nothing in this Settlement Contract shall bind, or constitute evidence for or against:

- •    BLP, DJRI, Ebarb, the Receiver, RFC, or Roger in the Ebarb Adversary Proceeding, the RFC Action, or the RFC Adversary Proceeding; and

- •    Any Person who claims a security interest in any Asset in any action, case, or proceeding to determine any issue regarding that claimed security interest, including, but not limited to the existence, validity, effectiveness, nature, extent, scope, or priority of that claimed security interest,

pursuant to any legal or equitable doctrine, including, but not limited to, claim preclusion, collateral estoppel, estoppel, issue preclusion, judicial estoppel, merger, *res judicata*, or waiver, whether offensively or defensively.

### 6.17    Representations/Warranties

The Parties represent and warrant to each other that:

#### 6.17.1        Authority

The Party, or the Party's authorized agent, has duly authorized, initialed/signed, and delivered this Settlement Contract.

#### 6.17.2        Binding Contract

This Settlement Contract constitutes a legal and binding agreement, enforceable against the Party in accord with the terms of this Settlement Contract.

### 6.17.3        Approvals

This Settlement Contract will not require the Party to file or register with, or obtain any permit, authorization, consent, or approval of, any governmental or non-governmental regulatory authority except for the Settlement Order.

### 6.17.4        Transfer

The Party owns, or will own on and after the Approval Date, the sole and unencumbered title to all Claims that such Party releases by section 6.15 and has not assigned, transferred, or divided, or purported to assign, transfer, or divide, by any means whatsoever, whether contract, judicial or private adjudicatory decree, act of government, operation of law, or otherwise, all or any portion of any Claim that such Party releases by section 6.15 at any time whatsoever.

### 6.17.5        Conflicts

The Party's initialing/signing of, delivery of, performance of, and compliance with this Settlement Contract will not violate or conflict with the terms of any agreement, contract, instrument, judgment, order, promise, or applicable law, statute, regulation, or rule to which the Party or any assets of the Party is bound.

### 6.17.6        Pending Actions

The Party is not subject to any Proceeding by which any Person seeks to restrain, prohibit, undermine the purpose of, or invalidate the Party's initialing/signing of, delivery of, performance of, and/or compliance with this Settlement Contract or any transfer of the Party's assets.

### 6.17.7        Commissions

No Person, including, but not limited to, advisors, agents, attorneys, auctioneers, bankers, bonding agents, brokers, dealers, insurers, and/or referral services, is entitled to a commission, contingent fee, finder's fee, referral fee, reimbursement, subrogation, or similar payment arising out of, or relating to, the consideration for this Settlement Contract.

## 6.18   Successors/Assignees

The DJRI Trustee may not assign the DJRI Trustee' rights or obligations under this Settlement Contract without the express, written consent of RFC, which RFC may give or withhold in RFC's sole and absolute discretion.  RFC may not

assign RFC's rights or obligations under this Settlement Contract without the express, written consent of the DJRI Trustee, which the DJRI Trustee may give or withhold in the DJRI Trustee' sole and absolute discretion.  Any purported assignment of this Settlement Contract without such written consent will be void from the outset.  This Settlement Contract will bind and benefit the legally- or contractually-permitted successors and assignees of the Parties, including, but not limited to, the administrators, attorneys-in-fact, conservators, dependents, descendants, executors, heirs, receivers, trustees, and other fiduciaries of the Parties.

### 6.19   Third-Party Beneficiaries

This Settlement Contract constitutes a contract for the benefit of only the Parties and, only to the extent of 6.14 of this Settlement Contract, the DJRI Trustee Releasees and the RFC Releasees.  No Person other than a Party has any right to prevent the Parties from terminating the benefits that this Settlement Contract accords to the Parties, the DJRI Trustee Releasees, and the RFC Releasees by any means whatsoever, including, but not limited to, further act, agreement, novation, omission, release, termination, or otherwise.  This Settlement Contract does not constitute a contract for the benefit of any Person other than the Parties, the DJRI Trustee Releasees, and the RFC Releasees in any manner whatsoever.  No Party, the DJRI Trustee Releasees, or the RFC Releasees has the right to commit any other Party, the DJRI Trustee Releasees, or the RFC Releasees to any agreement with any Person without the prior written consent of such other Party, the DJRI Trustee Releasees, or the RFC Releasees.

### 6.20   Survival

All Representations/Warranties in this Settlement Contract will survive, remaining fully enforceable and effective after, the Approval Date and any performance of this Settlement Contract.  Any obligations of any Party under this Settlement Contract, which, by the nature of such obligation, would continue beyond the cancellation, discharge, expiration, or termination of this Settlement Contract shall survive such cancellation, discharge, expiration, or termination.

### 6.21   Consideration

The consideration that the Parties recite in this Settlement Contract is the sole and only consideration for this Settlement Contract, which the Parties acknowledge is legally sufficient.

### 6.22   Integration

This Settlement Contract and the Liquidating Trust Agreement together set forth the entire agreement between the DJRI Trustee, on the one hand, and RFC, on the other hand, on all matters of any description and supersedes all prior oral or written agreements, contracts, representations, or understandings between the DJRI Trustee, on the one hand, and RFC, on the other hand, on all matters of any description except stipulations to which the DJRI Trustee and RFC are parties and on which the Bankruptcy Court has entered orders approving the stipulations in whole or in part, but only to the extent of the orders and only to the extent that the orders are consistent with this Settlement Contract and the Liquidating Trust Agreement.

### 6.23   Waiver, Amendment, and Modification

The DJRI Trustee, on the one hand, and RFC, on the other hand, may not waive any provision of this Settlement Contract except by an express written agreement that expressly identifies the provision/s waived, uses the term "waive" or "waiver" as to such provision/s, and states the scope/extent/duration of the waiver, and that all Parties have signed; no Party shall be deemed to waive implicitly any provision/s of this Settlement Contract by any act, omission, oral statement, or writing; a waiver of any provision of this Settlement Contract will not constitute an express or implied waiver of any other provision.  The Parties may amend or modify this Settlement Contract only by an express written agreement that expressly states that the Parties intend to amend or modify this Settlement Contract, that expressly sets forth the amendment or modification, and that all Parties have signed.

### 6.24   Time

Time is of the essence in this Settlement Contract and each and every provision of this Settlement Contract.

### 6.25   Further Assurances

Each Party will sign and deliver any and all documents and perform any and all acts reasonably necessary or appropriate to give effect to the terms of this Settlement Contract in a timely manner.

### 6.26   Titles

The Parties have inserted the section titles in this Settlement Contract only as a matter of convenience and for reference, and the section titles in no way define, describe, extend, or limit the scope of this Settlement Contract or the intent of the Parties in including any particular provision in this Settlement Contract.

### 6.27    Advice of Counsel

Each Party acknowledges that the Party has given mature and careful thought to this Settlement Contract, has had the opportunity to review this Settlement Contract independently with legal counsel of the Party's independent choice, and/or has the requisite experience and sophistication to agree to, interpret, and understand the particular language of this Settlement Contract.  In the event of any ambiguity in, or dispute regarding the interpretation of, this Settlement Contract, no one will resolve any ambiguity in, or dispute regarding the interpretation of, this Settlement Contract by any rule providing for interpretation against the Person who causes the uncertainty to exist or against the Person who is responsible for drafting this Settlement Contract.

### 6.28    Choice of Law

The laws of the State of California, including laws regarding statutes of limitation and/or laches, but not including conflicts of laws principles, will govern the application, enforcement, and interpretation of this Settlement Contract except to the extent that the laws of the United States of America pre-empt the laws of the State of California.

### 6.29    Jurisdiction/Venue

The Parties waive all objections to the personal jurisdiction and venue of the Bankruptcy Court to resolve all disputes arising out of, or related to, this Settlement Contract without waiving any rights of appeal.

### 6.30    Notices

The Parties will send all notices or other communications arising out of, or related to, this Settlement Contract, and any agreement, instrument, or paper to be delivered or served on the Parties for which this Settlement Contract expressly or implicitly provides, but excluding service of process or papers in any Proceeding, in writing by first class United States mail or any equivalent or better means of delivery with all delivery charges prepaid and by e-mail.  Such notices or communications will be deemed given, and such agreements, instruments, or papers will be deemed delivered, received, or served (as appropriate) on the date sent.  The Parties will send all such notices or other communications to the following addresses:

| | |
|---|---|
| To the DJRI Trustee: | Arturo Cisneros, Esq.<br>Ste. 714<br>3403 10th St.<br>Riverside CA  92501<br>Tel  951.682.9705<br>arturo@mclaw.org |
| with a copy to: | D. Edward Hays, Esq.<br>Chad V. Haes, Esq.<br>Marshack Hays, LP<br>870 Roosevelt Ave.<br>Irvine CA  92620<br>Tel  949.333.7777<br>ehays@marshackhays.com<br>chaes@marshackhays.com |
| To RFC: | Mr. Jerrold A. Fine<br>Revere Financial Corporation<br>Ste. 200<br>3637 Motor Ave.<br>Los Angeles CA  90034<br>Tel  310.836.8700<br>jerry@revfin.com |
| with a copy to: | Franklin R. Fraley Jr., Esq.<br>Fraley & Associates<br>Ste. 702<br>617 W. 7th St.<br>Los Angeles CA  90017<br>Tel  213.550.4000<br>ffraley@fraleylaw.com |
| and | Karl E. Block<br>Loeb & Loeb, LLP<br>Ste. 2200<br>10100 Santa Monica Blvd.<br>Los Angeles, CA 90067<br>Tel  310.282.2225<br>kblock@loeb.com |

Each Party may change the address stated above for such Party as such Party deems necessary by sending notice of such change in the manner for which this section provides.

### 6.31   Signing and Delivery

The Parties will sign two originals of this Settlement Contract and deliver one such original to the DJRI Trustee and the other such original to RFC.  The Parties may sign this Settlement Contract in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Settlement Contract.  A copy, digital image, or facsimile of this Settlement Contract, whether complete or in counterparts, will constitute sufficient evidence of the originals of this Settlement Contract for all purposes.

## 7.0   SIGNATURES

Dated:  2018-01-24

**ARTURO CISNEROS**,
solely in his capacity as chapter 7 trustee for the bankruptcy estate of Douglas J. Roger, M.D., Inc., APC

_____

Arturo Cisneros

Dated:  2018-01-24

**REVERE FINANCIAL CORPORATION**
a California corporation

By:  _____

Jerrold A. Fine
Chief Executive Officer

18-01-24—FRF-v17-Signature

**LIQUIDATING TRUST AGREEMENT**

**FOR**

**THE BANKRUPTCY ESTATE OF DEBTOR DOUGLAS J. ROGER, M.D., INC., APC**

**Dated:  2018-01-24**

## 1.0    REFERENCE DATE

This Liquidating Trust Agreement is dated 24 January 2018 for reference purposes.

## 2.0    PARTIES

The following persons enter into this Liquidating Trust Agreement and constitute a/the "Party/ies":

### 2.1    DJRI Trustee

"DJRI Trustee" means, Arturo Cisneros, solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Douglas J. Roger, M.D., Inc., APC, a California professional corporation, in the DJRI Bankruptcy, or any duly-appointed successor trustee in the DJRI Bankruptcy.

### 2.2    Liquidating Trustee

"Liquidating Trustee" means RFC, or RFC's nominee, solely in the capacity as trustee of the Liquidating Trust, or any successor trustee duly appointed pursuant to section 5.2.6 of this Liquidating Trust Agreement.

## 3.0    DEFINITIONS

In addition to the terms defined in section 2.0, the following terms, whether singular or plural, when printed in this Liquidating Trust Agreement with initial capital letters, shall have the following definitions.  Terms that appear in this Liquidating Trust Agreement with initial capital letters, but for which no definition appears in this section, shall have the meanings defined in the Settlement Contract.

### 3.1    Approval Date

"Approval Date" means the date that is fifteen days after the Settlement Order is entered unless a Party gives notice under section 6.2.3 of the Settlement Contract.

### 3.2    Beneficial Percentage Interest

"Beneficial Percentage Interest" means:

• seventy-five percent (75%) to RFC; and

• twenty-five percent (25%) to the DJRI Estate.

### 3.3   Beneficiaries

"Beneficiaries" means:

- RFC; and

- the DJRI Estate.

### 3.4   Business Day

"Business Day" means a day, other than Saturday, Sunday, a statutory holiday, or a date on which banks are closed in California.

### 3.5   DJRI Estate Priority Distribution

"DJRI Estate Priority Distribution" means $80,000.00 of cash Proceeds of the Transferred Assets that the Liquidating Trust shall pay pursuant to, and subject to the provisions of, section 5.4.4.2.

### 3.6   Indemnifiable Costs

"Indemnifiable Costs" means all loss, liability, expense (including, but not limited to, counsel fees and expenses, including all costs of defense), or damage that the Liquidating Trustee may incur or sustain arising out of, or resulting from, any act taken or omitted to be taken by the Liquidating Trustee in connection with the exercise and performance of its powers or duties under the Liquidating Trust to the fullest extent permitted by applicable law.

### 3.7   Net Proceeds

"Net Proceeds" shall mean, at any given time, the excess, if any, of the cumulative amount of Proceeds received by the Liquidating Trust less the cumulative amount of Trust Expenses after the Liquidating Trust pays the DJRI Estate Priority Distribution in full pursuant to, and subject to the provisions of, section 5.4.4.2.

### 3.8   Permitted Investments

"Permitted Investments" shall mean investments in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions having shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000) or other temporary, liquid investments, including, but not limited to, treasury bills, money market mutual funds that are registered with the United States Securities and Exchange Commission under the United States Investment Company Act of 1940, as amended, operated in accordance

with Rule 2a-7 and, at the time of such investment, are rated AAA by Moody's and/or AAA by S&P, including such funds for which the Liquidating Trustee or an affiliate provides investment advice or other services, and other similar investments.

### 3.9   Trust Expense Reserve

"Trust Expense Reserve" means Trust Assets or cash Proceeds of Trust Assets that the Liquidating Trustee holds in reserve, instead of distributing to the Beneficiaries, to pay Trust Expenses at any given time.

### 3.10   Trust Expenses

"Trust Expenses" shall mean, collectively, all payments that the Liquidating Trustee reasonably makes and all obligations that the Liquidating Trustee reasonably incurs that arise out of, or relate to, this Liquidating Trust, including, but not limited to, payments and obligations made or incurred before or after the Effective Date to:

- preserve Trust Assets;

- form the Liquidating Trust;

- administer the Liquidating Trust;

- perform the Liquidating Trustee's responsibilities under this Liquidating Trust Agreement;

- obtain professional advice and services;

- purchase supplies and equipment; and

- terminate the Liquidating Trust,

including, but not limited to, the fees and expenses of professionals who perform such tasks, insurance premiums, and taxes.

### 3.11   Proceeds

"Proceeds" means all property that the Liquidating Trustee receives:

- from the prosecution, arbitration, or settlement of a Transferred Asset, including, but not limited to, damages, settlement payments, etc.

18-01-24—FRF-v13-Signature

- from any disposition of a Transferred Asset, including, but not limited to, the sale, lease, license, exchange, etc., of such asset;

- on account of a Transferred Asset, including, but not limited to, payments, interest, dividends, distributions, fees, etc.;

- from any rights arising out of a Transferred Asset, including, but not limited to, royalties, commissions, etc.;

- from any claims arising out of the loss of, or damage to, a Transferred Asset, including, but not limited to, damages, restitution, etc.; and/or

- from any insurance covering the loss of, or damage to, a Transferred Asset, including, but not limited to, payments on claims, claims against the insurer for non-payment, etc.

### 3.12 Settlement Contract

"Settlement Contract" means the Settlement Contract between Arturo Cisneros, as Chapter 7 Trustee for the Bankruptcy Estate of Debtor Douglas J. Roger, M.D., Inc., APC, and Revere Financial Corporation, dated 24 January 2018 for reference purposes.

### 3.13 Tax Code

"Tax Code" means the United States Internal Revenue Code, 26 U.S.C. § 1 *et seq*.

### 3.14 Termination Date

"Termination Date" means the day on which the sooner of any of the following events occurs:

- The Liquidating Trustee has liquidated or abandoned all Transferred Assets, paid all Trust Expenses, and distributed all Net Proceeds; or

- The Liquidating Trustee notifies the DJRI Trustee that the Liquidating Trustee elects not to liquidate the remaining Trust Assets and offers to transfer all remaining Trust Assets to the DJRI Trustee; or

- Five years after the Approval Date, unless the Liquidating Trustee obtains the Bankruptcy Court's approval of one or more six-month

extensions no later than six months before the five-year or any extended term expires.

### 3.15   Treasury Regulations

"Treasury Regulations" means the regulations promulgated under the Tax Code.

### 3.16   Transferred Assets

"Transferred Assets" means all causes of action, claims, choses in action, and any rights of recovery whatsoever that the DJRI Estate now owns or owns in the future, including, but not limited to, claims arising under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code, that the DJRI Estate now owns or owns in the future, and specifically excluding only the:

- tax attributes of DJRI;

- DJRI Estate/DJRI-DBP Claim;

- DJRI Estate/OIC Claim;

- DJRI Estate/Trustee-Professionals Claims;

- Receiver Claims; and

- RFC Claims.

### 3.17   Trust Assets

"Trust Assets" mean the Transferred Assets and the Proceeds of the Transferred Assets; provided, however, that:

- a Transferred Asset shall no longer be a Trust Asset once the Liquidating Trustee has fully liquidated the Transferred Asset or has transferred the Transferred Asset back to the DJRI Estate; and

- Proceeds shall no longer be Trust Assets once the Liquidating Trustee uses the Proceeds to pay Trust Expenses or distributes the Proceeds to the Beneficiaries.

## 4.0   RECITALS

The Parties enter into this Liquidating Trust Agreement and establish the Liquidating Trust with reference to the following facts, understandings, and intentions:

**4.1**    Pursuant to section 6.6.1 of the Settlement Contract, if and when the Approval Date occurs, the DJRI Trustee shall transfer and shall be deemed for all purposes, without further action, to have transferred the Transferred Assets, regardless of when the Transferred Assets are created, from the DJRI Estate to the Liquidating Trust, to be held, administered, and liquidated for the benefit of the Beneficiaries pursuant to the terms of this Liquidating Trust Agreement.

**4.2**    The Liquidating Trust is created on behalf of, and for the sole benefit of, the Beneficiaries.

**4.3**    The Liquidating Trust is established for the sole purpose of liquidating the Transferred Assets and making distributions to the Beneficiaries in accordance with this Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business.

**4.4**    The Liquidating Trust is intended to be a liquidating trust as described in section 301.7701-4(d) of the Treasury Regulations.

## 5.0    AGREEMENT

The Parties agree as follows:

### 5.1    Effectiveness

This Liquidating Trust Agreement will be effective and binding on the Approval Date.

### 5.2    Declaration of Trust

#### 5.2.1    Creation of Trust

Pursuant to the Settlement Order, and effective on the Approval Date:

(i)    the Liquidating Trust shall be established for the benefit of the Beneficiaries; and

(ii)    the DJRI Trustee shall be deemed, without further action, to have transferred for prosecution and/or settlement the Transferred Assets, regardless of when they are created, to the Liquidating Trust, free and clear of all liens, claims, encumbrances, and interests (other than RFC's Security Interest and RFC's Adequate Protection Liens, and the DJRI Trustee's and RFC's interests in distributions from the Liquidating Trust) to achieve the purposes of the Liquidating Trust set forth in section 5.2.2.  Upon and after such transfer

until the Termination Date, the Liquidating Trustee will hold the Trust Assets in trust for the benefit of the Beneficiaries.

### 5.2.2  Purpose of Trust

The Liquidating Trust is organized for the sole purpose of liquidating the Transferred Assets and distributing Net Proceeds to the Beneficiaries in accordance with this Liquidating Trust Agreement and section 301.7701-4(d) of the Treasury Regulations, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust and with the Liquidating Trust's status as a liquidating trust for federal income tax purposes.  In furtherance of such purpose, the Liquidating Trustee is hereby authorized, subject to the terms of this Liquidating Trust Agreement, to (a) receive and hold the Transferred Assets, (b) hold, sell and/or exchange the Transferred Assets, and (c) liquidate the Transferred Assets and distribute Proceeds to the Beneficiaries from time to time in accordance with the terms of this Liquidating Trust Agreement.

### 5.2.3  Duration of Trust

The Liquidating Trust shall become effective upon the Approval Date and shall remain and continue in full force and effect until the Termination Date.

### 5.2.4  Nature of and Limitations on Interest of Trust Assets

Each Beneficiary's sole interest in the Liquidating Trust and the Trust Assets shall be each Beneficiary's beneficial interest in the Liquidating Trust and the obligation of the Liquidating Trustee to hold, manage, and dispose of the Trust Assets and to account for the Trust Assets as provided in this Liquidating Trust Agreement.  Each Beneficiary holds each Beneficiary's interest in the Liquidating Trust subject to all the terms and provisions of this Liquidating Trust Agreement, which shall be binding upon and inure to the benefit of such Beneficiary's successors.  Each Beneficiary's interest in the Liquidating Trust shall be held and construed to be in all respects intangible personal property, shall pass to any successor-in-interest as intangible personal property, and such succession and the event(s) causing such succession shall in no way terminate or affect this Liquidating Trust Agreement.

### 5.2.5  Effect of Termination

The Liquidating Trust, and all responsibilities of the Liquidating Trustee as trustee of the Liquidating Trust under this Liquidating Trust Agreement,

shall terminate on the Termination Date.  Upon the Termination Date, except as expressly provided in this Liquidating Trust Agreement, the Liquidating Trustee shall be forever discharged of, and released from, all powers, duties, and responsibilities under the Liquidating Trust and this Liquidating Trust Agreement.

### 5.2.6  Appointment and Term of the Liquidating Trustee and Successor Liquidating Trustee

#### 5.2.6.1  Appointment of and Acceptance by RFC as the Initial Liquidating Trustee

RFC is appointed as the initial Liquidating Trustee, to serve as trustee of the Liquidating Trust upon and subject to the terms and conditions set forth in this Liquidating Trust Agreement.  RFC is willing to accept, and does hereby accept, the appointment, to serve as trustee of the Liquidating Trust, and to hold and administer the Trust Assets pursuant to the terms and conditions of this Liquidating Trust Agreement and the Settlement Order.

#### 5.2.6.2  Bond

The Liquidating Trustee shall be exempt from obtaining or giving any bond or other security in any jurisdiction.  If and to the extent that the Liquidating Trustee does obtain a bond, the premium and other costs associated with obtaining and maintaining such bond shall be, and shall be reimbursed as, a Trust Expense.

#### 5.2.6.3  Term of Service as Trustee

The Liquidating Trustee shall serve as the Liquidating Trustee until the sooner of (a) the Termination Date; or (b) the Liquidating Trustee's resignation as the Liquidating Trustee (subject to the provisions of section 5.2.6.4).

#### 5.2.6.4  Resignation of Trustee

The Liquidating Trustee may voluntarily resign as the Liquidating Trustee at any time for any reason (or no reason) by giving the Beneficiaries at least ninety (90) days written notice of the Liquidating Trustee's intention to do so, provided, however, that, if any litigation to which the Liquidating Trustee is a party remains pending at the time, the Liquidating Trustee may not resign unless either (a) the Liquidating Trustee has appointed a Successor Trustee who has accepted the appointment or (b) the DJRI Trustee has voluntarily elected to serve as the Liquidating Trustee.  In the

event of a resignation, the Liquidating Trustee shall render to the Beneficiaries a full and complete accounting of money and assets received, disbursed, and held during the term of office of that Liquidating Trustee.  The resignation shall be effective on the latest of (a) the date specified in the notice, (b) the date that is ninety (90) days after the date the notice is delivered, or (c) the date the accounting described in the preceding sentence is delivered.  A resigning Liquidating Trustee shall be entitled to reimbursement of expenses and indemnification under this Liquidating Trust Agreement with respect to the period during which such resigning Liquidating Trustee served as the Liquidating Trustee under this Liquidating Trust Agreement.

### 5.2.6.5    Appointment of Successor Trustee

So long as RFC is the owner of the RFC Claim, RFC may appoint a successor Liquidating Trustee so long as the successor Liquidating Trustee is an affiliate of RFC.  For purposes of this paragraph, the term affiliate means: (i) any former, present, or future shareholder, director, officer, or agent of RFC; (ii) any entity which was, is, or will be, at the time of RFC's resignation as Liquidating Trustee, a direct or indirect subsidiary of RFC; (iii) any entity in which RFC has owned, does own, or will own, at the time of RFC's resignation as the Liquidating Trustee, at least five percent of the voting interests; (iv) any entity which any former, present, or future shareholder, director, or officer of RFC manages or controls; or (v) any successor by bequest, devise, or inheritance who succeeds to Jerrold Fine's interests in any property or is appointed as executor of Jerrold Fine's estate or as trustee under any trust established by Jerrold Fine.  If and when RFC is no longer the owner of the RFC Claim, any Beneficiary may petition the Bankruptcy Court to appoint a successor Liquidating Trustee.

### 5.2.6.6    Trust Continuance

The resignation or removal of a Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Liquidating Trust Agreement or invalidate any action previously taken by such Liquidating Trustee.  In the event that a successor Liquidating Trustee is not appointed when required under this Liquidating Trust Agreement for any reason, the DJRI Trustee may, but has no obligation to, elect to serve as the Liquidating Trustee until or unless a Beneficiary appoints a successor Liquidating Trustee.

### 5.2.6.7    Powers and Duties of Successor Liquidating Trustee

A successor Liquidating Trustee shall have all the rights, powers, duties, and privileges of, and shall otherwise be in the same position as, the predecessor Liquidating Trustee under this Liquidating Trust Agreement.

## 5.3    Administration of the Trust

### 5.3.1    Rights, Powers, Duties, and Privileges

This Liquidating Trust Agreement grants exclusive authority over administration of the Trust to the Liquidating Trustee, except as otherwise expressly provided in this Liquidating Trust Agreement. The Liquidating Trustee shall have the rights, powers, duties, and privileges expressly provided in this Liquidating Trust Agreement.   Except as otherwise provided in this Liquidating Trust Agreement, the Liquidating Trustee may exercise authority over the Trust Assets, over the acquisition, management, and disposition of Trust Assets, and over the management of the affairs of the Trust to the same extent as if the Liquidating Trustee were the sole owner of the Trust Assets in the Liquidating Trustee's own right.  In accordance with the terms of this Liquidating Trust Agreement, the Liquidating Trustee may take all action and may exercise all powers as may appear reasonably necessary or proper to comply with applicable laws and to effect and carry out the terms and purposes of this Liquidating Trust Agreement, including, without limitation, the power to take the actions listed in the subsections below and any powers reasonably incidental to the powers to take the actions listed in the subsections below, that the Liquidating Trustee, in the Liquidating Trustee's discretion, deems reasonably necessary or advisable to fulfill the purposes of the Liquidating Trust, unless otherwise specifically limited or restricted by this Liquidating Trust Agreement.   The enumeration of such powers in the subsections below shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized in any other section or provision of this Liquidating Trust Agreement:

- accept and hold legal title to the Trust Assets;

- take any action or make any decision with respect to, or in connection, with the Trust Assets or any action or decision reasonably related or incidental to such actions or decisions;

- exercise, sell, exchange, transfer, or otherwise dispose of the Trust Assets for cash or other consideration (including, without limitation, securities);

- transfer any Trust Asset back to the DJRI Trustee, but only with the DJRI Trustee's written consent;

- enter into agreements binding upon the Liquidating Trust and any amendments, modifications, supplements, or waivers to such agreements and execute, acknowledge, and deliver all instruments and agreements that the Liquidating Trustee, in the Liquidating Trustee's reasonable discretion, deems necessary, required, or advisable in connection with the Trust Assets, this Liquidating Trust Agreement, or the performance of the Liquidating Trustee's duties under this Liquidating Trust Agreement, including, without limitation, in connection with any sale, exchange, or other disposition of the Trust Assets;

- protect and enforce the rights to the Trust Assets vested in the Liquidating Trust or the Liquidating Trustee by this Liquidating Trust Agreement and enforce the rights and remedies of the Liquidating Trust or the Liquidating Trustee to the Trust Assets by any method deemed reasonably appropriate, including, without limitation, by judicial proceedings or otherwise;

- consult with the DJRI Trustee or DJRI and DJRI's shareholders, officers, employees, agents, successors, and affiliates at such times and with respect to such issues relating to the Liquidating Trust, the Trust Assets, and any matters connected with or incidental to the Liquidating Trust and the Trust Assets as the Liquidating Trustee considers to be appropriate, reasonable, or desirable;

- make all distributions and establish all reserves for which this Liquidating Trust Agreement provides from the Trust Assets;

- open and maintain bank accounts on behalf, or in the name, of the Liquidating Trust or the Liquidating Trustee as the trustee of the Liquidating Trust;

- make all required tax withholdings, file or cause to be filed all tax information returns required to be filed, and make tax elections by and on behalf of the Liquidating Trust;

- establish such reserves from the Trust Assets for taxes and other expenses of administration of the Liquidating Trust as

may be reasonably necessary or appropriate for the proper operation of matters incident to the Liquidating Trust;

•   pay all expenses and make all other payments relating to the Trust Assets and the operation of the Liquidating Trust, including all Trust Expenses, from any of the Trust Assets as provided in this Liquidating Trust Agreement;

•   retain and pay professionals or experts pursuant to section 5.3.2 from any of the Trust Assets;

•   invest any Trust Assets consisting of cash, as reasonably necessary to further the liquidating purpose of the Trust, in Permitted Investments having maturities consistent with the Liquidating Trust's obligations to make distributions to the Beneficiaries as and when required by this Liquidating Trust Agreement;

•   take any and all actions necessary to cause the Liquidating Trust to be or remain in compliance with applicable federal, state, and/or local laws, rules, and regulations;

•   engage in all acts that would constitute ordinary course of business in performing the obligations of trustees under a trust of this type;

•   sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitration, or other proceeding;

•   maintain bond and liability insurance if deemed necessary by the Liquidating Trustee; and

•   exercise all powers of the Liquidating Trustee provided under the Settlement Order.

Nothing contained in this Liquidating Trust Agreement shall be deemed to impose any obligation on the Liquidating Trustee at any time (i) to take any action to market the Trust Assets or to identify or solicit potential purchasers of the Trust Assets, (ii) to take any action to protect the value of the Trust Assets, except the obligation to act in a commercially reasonable manner to safeguard any money received by the Liquidating Trustee or (iii) to comply with any request or direction received by the Liquidating Trustee from the DJRI Trustee (or any creditor of the Bankruptcy Estate); provided, however, that the Liquidating Trustee shall comply with all Final Orders of any court of competent jurisdiction.

### 5.3.2   Employment of Professionals

The Liquidating Trustee may consult with and retain legal counsel, accountants, investment advisers, investment bankers, or other professional advisors or experts as the Liquidating Trustee deems necessary or desirable to assist the Liquidating Trustee in performing the Liquidating Trustee's responsibilities pursuant to the terms of this Liquidating Trust Agreement.  In addition, the Liquidating Trustee shall be permitted to retain independent legal counsel to advise the Liquidating Trustee and to represent the interests of the Liquidating Trustee in connection with the Liquidating Trust and this Liquidating Trust Agreement.  Any professional or expert employed by the Trust or the Liquidating Trustee in accordance with this section shall have and maintain malpractice or similar insurance as may be deemed reasonably appropriate by the Liquidating Trustee.  The reasonable fees and expenses of such persons shall be paid by the Liquidating Trustee as Trust Expenses.  The employment and payment of professionals by the Liquidating Trustee shall not require approval by the Bankruptcy Court and shall not otherwise be governed by the Bankruptcy Code.

### 5.3.3   Investment and Safekeeping of Trust Assets

The Liquidating Trustee shall hold all money and other cash-equivalent assets that the Liquidating Trustee receives in connection with the Trust Assets in trust for the benefit of the Beneficiaries in accounts held by the Liquidating Trustee separate and segregated from the accounts of RFC until the Liquidating Trustee pays out and/or distributes such assets as provided in this Liquidating Trust Agreement.  The Liquidating Trustee shall be under no liability for interest or producing income on any money and other cash-equivalent assets that the Liquidating Trustee receives, except to the extent that the Liquidating Trustee actually receives such interest or income.  Investments of any money and other cash-equivalent assets held by the Liquidating Trustee shall be administered in accordance with the terms of this Liquidating Trust Agreement; provided, however, that the right and power of the Liquidating Trustee to invest any Trust Assets consisting of money and other cash-equivalent assets shall be limited to Permitted Investments having maturities consistent with the Liquidating Trust's obligations to make distributions of Net Proceeds pursuant to this Liquidating Trust Agreement.

### 5.3.4   Insurance

The Liquidating Trustee may, in the Liquidating Trustee's sole and absolute discretion, maintain insurance.

### 5.3.5 Compensation and Expenses of the Liquidating Trust

#### 5.3.5.1 Liquidating Trustee Compensation

The Liquidating Trustee shall receive no compensation for the Liquidating Trustee's services as trustee of the Liquidating Trust.

#### 5.3.5.2 Trust Expenses

##### 5.3.5.2.1 Payment

The Liquidating Trustee may pay Trust Expenses in the amounts and at the times the Liquidating Trustee deems appropriate, in the Liquidating Trustee's sole and absolute discretion, after the Liquidating Trust pays the DJRI Estate Priority Distribution in full pursuant to, and subject to the provisions of, section 5.4.4.2.

##### 5.3.5.2.2 Approval

RFC need not obtain any order from any court approving any Trust Expenses before or after incurring or paying any Trust Expenses.

##### 5.3.5.2.3 Liquidating Trustee Advances

The Liquidating Trustee, in the Liquidating Trustee's sole and absolute discretion, shall advance or incur any/all expenses that the Liquidating Trustee chooses to advance or incur to investigate, attempt to liquidate, or actually liquidate any/all of the Transferred Assets. Any and all advances by the Liquidating Trustee shall constitute Trust Expenses. The Liquidating Trustee shall have no recourse against any other person, including, but not limited to, the DJRI Trustee or the Beneficiaries for any amounts that the Liquidating Trustee advances or expenses the Liquidating Trustee makes or incurs to liquidate Transferred Assets. The Liquidating Trustee shall recover the amounts that the Liquidating Trustee advances and expenses the Liquidating Trustee incurs to liquidate Transferred Assets solely from the Proceeds of the Transferred Assets after the Liquidating Trust pays the DJRI Estate Priority Distribution in full pursuant to, and subject to the provisions of, section 5.4.4.2. The

Liquidating Trustee shall keep records to account for the Liquidating Trustee's advances and incurred expenses, and shall recover such advances and amounts incurred from Proceeds as the Liquidating Trustee receives Proceeds.

### 5.3.5.2.4    Trust Expense Reserve

#### 5.3.5.2.4.1    Funding

The Liquidating Trustee may hold Trust Assets and Proceeds in the Trust Expense Reserve to pay Trust Expenses instead of distributing Trust Assets and Proceeds after the Liquidating Trust pays the DJRI Estate Priority Distribution in full pursuant to, and subject to the provisions of, section 5.4.4.2.

#### 5.3.5.2.4.2    Replenishment

To the extent that the Liquidating Trustee uses the Trust Expense Reserve to pay Trust Expenses, the Liquidating Trustee may replenish the Trust Expense Reserve from Trust Assets and Proceeds.

#### 5.3.5.2.4.3    Reasonable Estimates

The Liquidating Trustee shall not maintain the Trust Expense Reserve in an amount greater than reasonable estimates of future fees/expenses for Liquidating Trust operations and actions that the Liquidating Trustee has undertaken or plans to undertake.

## 5.3.6    Transferred Assets

### 5.3.6.1    Liquidation of Transferred Assets

The Liquidating Trustee may take such steps as the Liquidating Trustee deems reasonable to liquidate the Transferred Assets, including, but not limited to, commencing litigation, settling the

Transferred Assets, and selling the Transferred Assets to an independent third-party.  The Liquidating Trustee may, but is not obligated, to seek approval of the Bankruptcy Court of any proposed settlement and/or sale of a Transferred Asset.  Without limiting the generality of the foregoing, the Liquidating Trustee is not obligated to comply with section 363 of the Bankruptcy Code with respect to any sale or Federal Rule of Bankruptcy Procedure 9019(a) with respect to any settlement.

### 5.3.6.2      No Duty to Liquidate Any Particular Trust Asset

The Liquidating Trustee shall owe no duty to the Beneficiaries, the DJRI Trustee, the DJRI Estate, or the creditors of the DJRI Estate to attempt to, or actually, liquidate any/all of the Transferred Assets. The Liquidating Trustee, in the Liquidating Trustee's sole and absolute discretion, shall decide which, if any, Transferred Assets the Liquidating Trustee attempts to liquidate, or actually liquidates.

### 5.3.6.3      Duty of Cooperation

The DJRI Trustee shall provide reasonable cooperation to the Liquidating Trustee, at the Liquidating Trust's expense, in any investigation of the Transferred Assets that the Liquidating Trustee chooses to undertake.

## 5.4     Distributions

### 5.4.1   Distributions Limited to Trust Assets

All distributions to be made by the Liquidating Trustee to, or for the benefit of, the Beneficiaries shall be made only from Trust Assets.

### 5.4.2   Annual Distributions

The Liquidating Trustee shall determine, at least annually, whether there are Net Proceeds and, if there are Net Proceeds, shall make distributions of the Net Proceeds to the Beneficiaries.

### 5.4.3   Distributions to RFC

Until such time as the RFC Claim is paid in full, the Liquidating Trustee shall distribute to RFC seventy-five percent (75%) of the Net Proceeds of any recovery from any of the Transferred Assets if and when the Liquidating Trustee liquidates the Transferred Assets, free of any claims by the DJRI Estate.  RFC's share of the Net Proceeds shall be applied first to the secured portion of the RFC Claim and second to the unsecured

portion of the RFC Claim as set forth in section 6.9.1 of the Settlement Contract. Once the RFC Claim is paid in full, all of the Net Proceeds shall be distributed to the DJRI Estate.

### 5.4.4  Distributions to the DJRI Estate

#### 5.4.4.1    Generally

Until such time as all Administrative Allowed Claims and Allowed Non-Administrative Claims are paid in full, the Liquidating Trustee, without having to obtain any order from the Bankruptcy Court, shall pay to the DJRI Trustee on behalf of the DJRI Estate twenty-five percent (25%) of the Net Proceeds, despite RFC's security interest in the Net Proceeds. The amounts distributed to the DJRI Estate in accordance with this section shall be used to pay Allowed Administrative Claims and Allowed Non-Administrative Claims. After all Allowed Administrative Claims and Allowed Non-Administrative Claims are paid in full, any amounts remaining shall be distributed to RFC until the RFC Claim is paid in full, and after the RFC Claim is paid in full, such remaining amounts will be paid to the DJRI Trustee on behalf of the DJRI Estate.

#### 5.4.4.2    DJRI Estate Priority Distribution

Notwithstanding sections 5.4.3 and 5.4.4.1:

- The Liquidating Trust shall pay the DJRI Estate Priority Distribution to the DJRI Trustee on behalf of the DJRI Estate in full and without deduction for any purpose from the Proceeds of the Transferred Assets before funding the Trust Expense Reserve, paying or reimbursing any Trust Expense except taxes, or making any distribution to RFC; provided, however, that, prior to paying the DJRI Estate Priority Distribution, the Liquidating Trust may fund the Trust Expense Reserve for taxes or pay taxes that the Liquidating Trust owes or reasonably expects to owe related to the Liquidating Trust's generation of the Proceeds that the Liquidating Trust will use to pay the DJRI Estate Priority Distribution.

- After the Liquidating Trust pays the DJRI Estate Priority Distribution in full, the Liquidating Trustee shall make distributions of Net Proceeds only to RFC until total distributions equal seventy-five percent to

RFC and twenty-five percent to the DJRI Estate, after which the Liquidating Trustee shall make distributions in accord with sections 5.4.3 and 5.4.4.1.

### 5.4.5 Non-Cash Proceeds

If, and to the extent that, the Liquidating Trustee receives Proceeds that are not money or cash equivalents (such as interests in real property, notes, or stipulated judgments), the Liquidating Trustee may, but is not obligated to, liquidate such non-cash Proceeds and then distribute the resulting Net Proceeds if and when such non-cash Proceeds are liquidated.  If the Liquidating Trustee is unable to liquidate such non-cash Proceeds, the Liquidating Trustee may, so long as the DJRI Trustee consents in writing, transfer such non-cash Proceeds to the DJRI Estate to be administered by the DJRI Trustee as Other Assets; provided that with respect to those non-cash Proceeds/Other Assets transferred back to the DJRI Estate, the DJRI Trustee shall be entitled to recover from such non-cash Proceeds/Other Assets all reasonable fees and costs incurred to administer such non-cash Proceeds/Other Assets.  For avoidance of doubt, the Liquidating Trustee shall not be required to make any distributions of non-cash Proceeds to any Person.

## 5.5 Prohibited Acts

### 5.5.1 Not Engaging in Trade or Business

Notwithstanding anything in this Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall not be authorized to and shall not engage in any trade or business.

### 5.5.2 No Prohibited Investments

The Liquidating Trustee is not authorized to engage in any investment or other activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations or inconsistent with section 345 of the Bankruptcy Code.

### 5.5.3 No Election under Section 1.468B-9(c)(ii)

The Liquidating Trustee shall not make the election described in section 1.468B-9(c)(ii) of the Treasury Regulations to treat any portion of the Trust subject to disputed claims as a "disputed ownership fund."

### 5.5.4   No Acting as Investment Company

Neither the Liquidating Trust nor the Liquidating Trustee shall take any action that would result in the Liquidating Trust becoming subject to registration as an "investment company" pursuant to the United States Investment Company Act of 1940, as amended.

### 5.5.5   No Commingling

The Liquidating Trustee shall not commingle any of the Trust Assets with the Liquidating Trustee's own property or the property of any other Person.

## 5.6    Maintenance of Records

The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Assets and an accounting of all receipts and disbursements.   The books and records of the Liquidating Trust shall be open to inspection by any Beneficiary at the offices of the Liquidating Trustee at any reasonable time during normal business hours, subject to reasonable prior notice.

## 5.7    Periodic Reports and Financial Statements

Within sixty (60) days after the end of each calendar year, beginning with the calendar year in which the Approval Date occurs, the Liquidating Trustee shall prepare or cause to be prepared, at the expense of the Liquidating Trust (and payable as a Trust Expense), and shall make available to the Beneficiaries, an unaudited operating statement showing all Proceeds received by the Trust and all Trust Expenses for such calendar year, which report shall be deemed to have been made available to the Beneficiaries if such report is distributed to the Beneficiaries and their counsel by mail or e-mail.

## 5.8    Additional Reports and Filing

The Liquidating Trustee shall timely prepare, file, and distribute, or cause to be prepared, filed, and distributed, such additional statements, reports, and submissions as in the Liquidating Trustee's judgment may be necessary to cause the Liquidating Trust and the Liquidating Trustee to be in compliance with applicable law.

### 5.9    **Tax Matters**

### 5.9.1    **Trust is a Liquidating Trust Taxable as a Grantor Trust**

The parties intend that the Liquidating Trust qualify as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal (and applicable state) income tax purposes.  For federal (and applicable state) income tax purposes, all parties shall treat the Liquidating Trust as a grantor trust, of which RFC and the DJRI Estate are the owners and grantors.

For federal (and applicable state) income tax purposes, all parties shall treat the transfer of the Transferred Assets as described in section 5.2.1 as (i) a transfer by the DJRI Estate of a 75% undivided interest in each specific asset to RFC, followed by (ii) a transfer by the DJRI Estate and RFC of a 25% and a 75% undivided interest in each specific asset, respectively, to the Liquidating Trust in exchange for beneficial interests in the Liquidating Trust.

The Parties agree that the current fair market value of the Transferred Assets is zero and agree to treat the Transferred Assets as having a fair market value of zero on the Approval Date, which value shall be used consistently by all Parties for all federal and state income tax purposes.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations.  The Liquidating Trustee shall not file and shall have no responsibility for filing tax returns inconsistent with the Liquidating Trust's classification as a liquidating trust in any circumstances.  Within fifteen days prior to the filing of any return, the Liquidating Trustee shall provide the DJRI Trustee and RFC with a draft of any returns to be filed on behalf of the Liquidating Trust for review and comment.

Within sixty days after the end of the calendar year, the Liquidating Trustee will send to each Beneficiary and their counsel a separate statement setting forth each Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct each Beneficiary to report such items on the Beneficiary's federal tax return.

All allocations of taxable income of the Liquidating Trust will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed by the Liquidating Trustee to the Beneficiaries. Similarly, all allocations of taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic

loss would be borne by the Beneficiaries of the Liquidating Trust immediately following a liquidating distribution of all remaining Trust Assets.

### 5.9.2   Taxes Imposed on Trust

The Liquidating Trustee shall promptly pay all taxes determined to be due by the Liquidating Trust or by the Liquidating Trustee on behalf of the Liquidating Trust, if any, by a taxing authority out of, and to the extent of, the Trust Assets.   The Liquidating Trustee may include in the Trust Expense Reserve amounts to pay any accrued or potential tax liability arising out of the operations of the Liquidating Trust or ownership of Trust Assets.   In no event shall the Liquidating Trustee be liable for a tax liability of the Liquidating Trust or responsible for payment of any tax obligation of the Liquidating Trust from the Liquidating Trustee's own assets.   For purposes of clarification only, and without limiting this section in any manner, the Liquidating Trustee shall not be required to pay any taxes assessed on the Liquidating Trustee by any taxing authority, whether in a capacity as trustee of the Liquidating Trust or in a capacity asserted by the taxing authority (for example, as a partner or a person responsible for payment of such taxes) whether or not there is any basis for such assertion.   The Liquidating Trustee shall be entitled to recover all such taxes, interest, and penalties assessed to, and paid by the Liquidating Trustee, plus all costs and fees, including legal fees, incurred by the Liquidating Trustee to recover such amounts and to resolve the dispute with the taxing authority, from any of the Trust Assets, except the DJRI Estate Priority Distribution, as provided in this section.   The Liquidating Trustee shall not be liable to any Beneficiary, the Liquidating Trust, or any Person for any taxes, interest, penalties, or other amounts, including costs and fees (including legal fees), and losses and damages of any type whatsoever, attributable to the Liquidating Trustee's refusal to pay, or non-payment of, taxes assessed to the Liquidating Trust or to the Liquidating Trustee on behalf of the Liquidating Trust.

### 5.9.3   Tax Withholding and Reporting Requirements; Duty to Cooperate

All distributions pursuant to this Liquidating Trust Agreement shall be subject to any applicable tax withholding and reporting requirements.   The Liquidating Trustee shall be authorized, but not directed, to take any actions that the Liquidating Trustee determines to be necessary or desirable to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Liquidating Trust Agreement, each Beneficiary receiving a distribution pursuant to this Liquidating Trust Agreement, including RFC and the DJRI Estate, shall have exclusive responsibility for the satisfaction and payment of any tax obligations

imposed on the Beneficiary by any governmental unit on account of such distribution, including income, withholding, and other tax obligations.

## 5.10   Limitation of Liability; Right to Rely

### 5.10.1 Limitations on Duties of the Liquidating Trustee

To the fullest extent permitted by law, the Liquidating Trustee shall have no duties other than as expressly set forth in this Liquidating Trust Agreement.

### 5.10.2 Limitation of the Liquidating Trustee's Liability and Obligation to Act.

Anything in this Liquidating Trust Agreement or the Settlement Order to the contrary notwithstanding, the Liquidating Trustee shall not be (a) liable to any Person (i) for any loss or damages by reason of any action taken or omitted by the Liquidating Trustee, except to the extent such loss or damage is finally determined by an order of a court of competent jurisdiction, from which no appeal can be or is taken, to have resulted from the Liquidating Trustee's willful misconduct, bad faith, or gross negligence, or (ii) for any act or omission made in reliance upon advice given to the Liquidating Trustee by legal counsel or other professional advisors or experts consulted by the Liquidating Trustee or (b) obligated to take (or not to take) any action that the Liquidating Trustee reasonably believes in the Liquidating Trustee's discretion may (i) constitute a violation of any obligation   Liquidating Trustee may have to the Beneficiaries or the Liquidating Trust or (ii) violate any applicable law, licensing requirement, or similar provision or requirement; provided, however, that the Liquidating Trustee shall in no event be liable to any Person for any loss or damages by reason of any action taken or omitted by the Liquidating Trustee at the direction of the DJRI Trustee pursuant to the terms of this Liquidating Trust Agreement.

### 5.10.3 Reliance on Documents or Advice of Counsel or Professional Advisors or Experts

The Liquidating Trustee and the Liquidating Trust may rely on, shall be protected in, and shall have or incur no liability from acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, or other document believed by the Liquidating Trustee to be genuine and to have been signed by the proper party or parties.  The Liquidating Trustee may engage and consult with legal counsel or other professional advisors or experts of their choosing and shall not be liable for any action taken or omitted by the Liquidating Trustee in reliance upon the advice of such counsel or other

professional advisors or experts chosen by the Liquidating Trustee.  In any event, the Liquidating Trustee and the Trust may rely on any final order of the Bankruptcy Court or other court of competent jurisdiction.

### 5.10.4 Indemnification

The Liquidating Trustee shall be indemnified and receive reimbursement from the Trust Assets against any and all Indemnifiable Costs, except if any such Indemnifiable Costs are finally determined by an order of a court of competent jurisdiction, from which no appeal can be, or timely has been, taken, to result from the Liquidating Trustee's willful misconduct, bad faith, or gross negligence; provided, however, that the immediately preceding exception shall not apply and the Liquidating Trustee shall be entitled to receive Indemnifiable Costs for any action taken or omitted by the Liquidating Trustee at the direction of the DJRI Trustee pursuant to the terms of this Liquidating Trust Agreement.  All Indemnifiable Costs shall be paid out of the Trust Assets promptly as incurred by the Liquidating Trustee after first paying the DJRI Estate Priority Distribution in full; provided, however, that if it is finally determined by an order of a court of competent jurisdiction, from which no appeal can be, or timely was, taken that any Indemnifiable Cost paid to the Liquidating Trustee was not compensable under this section, then the Liquidating Trustee shall promptly return the non-compensable portion of all Indemnifiable Costs to the Liquidating Trust.  This indemnification shall survive the dissolution, resignation, or removal, as may be applicable, of the Liquidating Trustee, or the termination of the Trust, and shall inure to the benefit of the Liquidating Trustee's successors and assigns.

### 5.10.5 Exculpation

The Liquidating Trustee, the Liquidating Trust, and their respective employees, attorneys, accountants, consultants, or agents, shall (a) not have or incur any liability to any Person for any act or omission in connection with, or arising out of, the administration of the Liquidating Trust, the Trust Assets, or the property to be distributed under this Liquidating Trust Agreement, except if such act or omission is finally determined by an order of a court of competent jurisdiction, from which no appeal can be, or timely has been, taken to be the direct result of bad faith by the Liquidating Trustee or to constitute willful misconduct or gross negligence by the Liquidating Trustee (which exception shall not apply in the case of any action taken or omitted by the Liquidating Trustee at the direction of the DJRI Trustee pursuant to the terms of this Liquidating Trust Agreement) or to involve a transaction from which the Liquidating Trustee derived an improper personal benefit, (b) be entitled to rely upon the advice of counsel with respect to the Liquidating Trustee's duties and responsibilities under the Liquidating Trust, and (c) be fully protected and

exculpated from liability in acting, or in refraining from acting, in accordance with such advice.  No amendment or repeal of this section shall adversely affect any right or protection of the Liquidating Trustee, the Liquidating Trust, and their respective employees, attorneys, accountants, consultants, or agents that exists at the time of such amendment or repeal.  Further, on the closing of the Bankruptcy Case, RFC, the Liquidating Trustee, any successor or assignee of the Liquidating Trustee, and the Liquidating Trust shall be automatically, and without further action or order, be released to the fullest extent permitted by law from any and all claims with respect to their actions taken under this Liquidating Trust Agreement.

## 5.11   Third Party Rights in Dealing with the Liquidating Trustee

In the absence of actual knowledge to the contrary, any Person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents to act in connection with the Trust Assets.  There is no obligation on any Person dealing with the Liquidating Trustee to inquire into the validity, expediency, or propriety of any transaction by the Liquidating Trustee or any agent of the Liquidating Trustee or the Liquidating Trustee's authority in connection with the acquisition, management, or disposition of Trust Assets.

## 5.12   Successors/Assignees

The DJRI Trustee may not assign the DJRI Estate's rights or any obligations under this Liquidating Trust Agreement without the express, written consent of RFC, which RFC may give or withhold in RFC's sole and absolute discretion. RFC may not assign RFC's rights or obligations under this Liquidating Trust Agreement without the express, written consent of the DJRI Trustee, which the DJRI Trustee may give or withhold in the DJRI Trustee's sole and absolute discretion.   Any purported assignment of rights or obligations under this Liquidating Trust Agreement without such written consent will be void from the outset.  This Liquidating Trust Agreement will bind and benefit the legally- or contractually-permitted successors and assignees of the Parties, including, but not limited to, the administrators, attorneys-in-fact, conservators, dependents, descendants, executors, heirs, receivers, trustees, and other fiduciaries of the Parties.

## 5.13   Primacy of Liquidating Trust Agreement

In the case of any inconsistency between this Liquidating Trust Agreement, on the one hand, and the Settlement Contract, on the other hand, the Liquidating Trust Agreement shall govern.

18-01-24—FRF-v13-Signature

### 5.14    Interpretation

In the event of any ambiguity in, or dispute regarding the interpretation of, this Liquidating Trust Agreement, no one will resolve any ambiguity in, or dispute regarding the interpretation of, this Liquidating Trust Agreement by any rule providing for interpretation against the Person who causes the uncertainty to exist or against the Person who is responsible for drafting this Liquidating Trust Agreement.

### 5.15    Waiver, Amendment, and Modification

The Parties may not waive and shall not be deemed to have waived any provision of this Liquidating Trust Agreement except by an express written agreement that expressly identifies the provision/s waived, uses the term "waive" or "waiver" as to such provision/s, and states the scope/extent/duration of the waiver, and that all Parties have signed; no Party shall be deemed to waive implicitly any provision/s of this Liquidating Trust Agreement by any act, omission, oral statement, or writing; a waiver of any provision of this Liquidating Trust Agreement will not constitute an express or implied waiver of any other provision.  The Parties may amend or modify this Liquidating Trust Agreement only by an express written agreement that expressly states that the Parties intend to amend or modify this Liquidating Trust Agreement, that expressly sets forth the amendment or modification, and that all Parties have signed.

### 5.16    Further Assurances

Each Party will sign and deliver any and all documents and perform any and all acts reasonably necessary or appropriate to give effect to the terms of this Liquidating Trust Agreement in a timely manner.

### 5.17    Titles

The Parties have inserted the section titles in this Liquidating Trust Agreement only as a matter of convenience and for reference, and the section titles in no way define, describe, extend, or limit the scope of this Liquidating Trust Agreement or the intent of the Parties in including any particular provision in this Liquidating Trust Agreement.

### 5.18    Advice of Counsel

Each Party represents and warrants that the Party has given mature and careful thought to this Liquidating Trust Agreement, has had the opportunity to review this Liquidating Trust Agreement independently with legal counsel of the Party's independent choice, and/or has the requisite experience and sophistication to agree to, interpret, and understand the particular language of this Liquidating Trust Agreement.

### 5.19   Choice of Law

The laws of the State of California, including laws regarding statutes of limitation and/or laches, but not including conflicts of laws principles, will govern the application, enforcement, and interpretation of this Liquidating Trust Agreement except to the extent that the laws of the United States of America pre-empt the laws of the State of California.

### 5.20   Retention of Jurisdiction

Except as otherwise set forth in the Settlement Order or in this Liquidating Trust Agreement, and to the fullest extent permitted by law, the Bankruptcy Court shall retain and have exclusive jurisdiction over any motions, adversary proceedings, contested or litigated matters and any other matter related to the Liquidating Trust, including but not limited to any Proceedings to liquidate a Transferred Asset, whether pending on the Effective Date or brought after the Effective Date.

### 5.21   Jurisdiction/Venue

The Parties waive all objections to the personal jurisdiction and venue of the Bankruptcy Court to resolve all disputes arising out of, or related to, this Liquidating Trust Agreement.

### 5.22   Standing of the Liquidating Trustee

To the fullest extent permitted by law, in connection with the Liquidating Trustee's liquidation of the Transferred Assets, the Liquidating Trustee shall have standing to assert claims and raise defenses to the extent that the DJRI Trustee would have standing to do so if DJRI Trustee had not transferred the Transferred Assets to the Liquidating Trust.

### 5.23   Severability

Every provision of this Liquidating Trust Agreement, whenever possible, will be interpreted in such manner as to be effective and valid under applicable law.  If any provision of this Liquidating Trust Agreement is deemed illegal, invalid, or unenforceable under applicable law in any respect, the validity, legality, and enforceability of the remaining provisions contained in this Liquidating Trust Agreement shall not in any way be affected or impaired by such decision, and such invalid, illegal or unenforceable provisions shall be deemed modified to the extent necessary to render those provisions valid while most nearly preserving the original intent.

### 5.24   Notices

The Parties will send all notices or other communications arising out of, or related to, this Liquidating Trust Agreement, and any agreement, instrument, or paper to be delivered or served on the Parties for which this Liquidating Trust Agreement expressly or implicitly provides, but excluding service of process or papers in any Proceeding, in writing by first class United States mail or any equivalent or better means of delivery with all delivery charges prepaid and e-mail.  Such notices or communications will be deemed given, and such agreements, instruments, or papers will be deemed delivered, received, or served (as appropriate) on the date sent.  The Parties will send all such notices or other communications to the following addresses:

|  |  |
|---|---|
| To the DJRI Trustee: | Arturo Cisneros, Esq.<br>Ste. 714<br>3403 10th St.<br>Riverside CA  92501<br>Tel  951.682.9705<br>arturo@mclaw.org |
| with a copy to: | D. Edward Hays, Esq.<br>Chad V. Haes, Esq.<br>Marshack Hays LLP<br>870 Roosevelt<br>Irvine CA  92620<br>Tel  949.333.7777<br>ehays@marshackhays.com<br>chaes@marshackhays.com |
| To RFC: | Mr. Jerrold A. Fine<br>Revere Financial Corporation<br>Ste. 200<br>3637 Motor Ave.<br>Los Angeles CA  90034<br>Tel  310.836.8700<br>jerry@revfin.com |
| with a copy to: | Franklin R. Fraley Jr., Esq.<br>Fraley & Associates<br>Ste. 702<br>617 W. 7th St.<br>Los Angeles CA  90017<br>Tel  213.550.4000<br>ffraley@fraleylaw.com |

and                          Karl E. Block
                             Loeb & Loeb, LLP
                             Ste. 2200
                             10100 Santa Monica Blvd.
                             Los Angeles, CA 90067
                             Tel:  310.282.2225
                             kblock@loeb.com

Each Party may change the address stated above for such Party as such Party deems necessary by sending notice of such change in the manner for which this section provides.

### 5.25  Signing and Delivery

The Parties may sign this Liquidating Trust Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Liquidating Trust Agreement.  A copy, digital image, or facsimile of this Liquidating Trust Agreement, whether complete or in counterparts, will constitute sufficient evidence of the originals of this Liquidating Trust Agreement for all purposes.

## 6.0  SIGNATURES

Dated:  2018-01-24                **ARTURO CISNEROS**,
                                  solely in his capacity as chapter 7 trustee for the bankruptcy estate of Douglas J. Roger, M.D., Inc., APC

                                  _____
                                          Arturo Cisneros

Dated:  2018-01-24                **REVERE FINANCIAL CORPORATION**
                                  a California corporation

                                  By: _____
                                       Jerrold A. Fine
                                       Chief Executive Officer

18-01-24—FRF-v13-Signature